84 A.3d 680

**COMMONWEALTH of Pennsylvania, Appellee**

v.

**Gordon Charles WILLIAMS, Appellant.**

Supreme Court of Pennsylvania.

Argued Nov. 27, 2012.

Resubmitted Dec. 17, 2013.

Decided Jan. 21, 2014.

Roarke Thomas Aston, Esq., Glenn D. Welsh, Esq., Berks County Public Defender's Office, for Gordon Charles Williams.

John T. Adams, Esq., Kelly S. Kline, Esq., Melissa Joy Noyes, Esq., Ellen Rebecca West, Esq., Berks County District Attorney's Office, for Commonwealth of Pennsylvania.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, STEVENS, JJ.

## *OPINION*

Justice McCAFFERY.

In this interlocutory matter, Gordon Charles Williams (Appellant) appeals from the Superior Court's order reversing the trial court's determination that he had the right to present testimony of an expert witness to rebut the Commonwealth's evidence in support of its motion, pursuant to 42 Pa.C.S. § 5985, to allow a child victim to testify at a preliminary hearing via contemporaneous alternative method. We affirm.

On July 1, 2010, the Commonwealth charged Appellant with rape of a child, indecent assault, corruption of minors, endangering the welfare of children, and indecent exposure.[1] The charges all stemmed from Appellant's alleged acts toward an eight-year-old girl, K.H., on January 8, 2010. The Commonwealth immediately filed a motion requesting that the preliminary hearing and courtroom testimony be presented by

[1]. Respectively, 18 Pa.C.S. §§ 3121(c), 3126(a)(7), 6301(a), 4304(a)(1), and 3127(a).

closed-circuit television, pursuant to 42 Pa.C.S. § 5985, which provides in pertinent part:

Testimony by contemporaneous alternative method.

(a.1) Determination.—Before the court orders the child victim or the child material witness to testify by a contemporaneous alternative method, the court must determine, based on evidence presented to it, that testifying either in an open forum in the presence and full view of the finder of fact or in the defendant's presence will result in the child victim or child material witness suffering serious emotional distress that would substantially impair the child victim's or child material witness's ability to reasonably communicate. In making this determination, the court may do all of the following:

(1) Observe and question the child victim or child material witness, either inside or outside the courtroom.

(2) Hear testimony of a parent or custodian or any other person, such as a person who has dealt with the child victim or child material witness in a medical or therapeutic setting.

(a.2) Counsel and confrontation.

(2) If the court hears testimony under subsection (a.1)(2), the defendant, the attorney for the defendant and the attorney for the Commonwealth have the right to be present.

42 Pa.C.S. § 5985.[2]

In its motion, the Commonwealth averred that K.H. had indicated that she would be too afraid of Appellant to talk

**2.** This provision was enacted by the General Assembly in 2004, following the 2003 amendment to Article 1, Section 9 of the Pennsylvania Constitution. *See Commonwealth v. Charlton,* 902 A.2d 554, 558 (Pa.Super.2006). The amendment removed the right of an accused person to confront the witnesses against him or her "face-to-face." *See Bergdoll v. Commonwealth of Pennsylvania,* 858 A.2d 185, 190–91, 201–02 (Pa.Cmwlth.2004) (*en banc*), *affirmed,* 583 Pa. 44, 874 A.2d 1148 (2005) (*per curiam*). Thus, the text of the Pennsylvania Constitution guaranteeing accused persons the right to confront the witnesses against them was made identical to the text of the Confrontation Clause in the Sixth Amendment to the United States Constitution. Specifically, the accused has the right "to be confronted with the witnesses against him." In *Bergdoll,* the Commonwealth Court rejected a challenge to

about what had happened to her if he were present in the courtroom. At a hearing on the motion, the trial court stated that it "need[ed] to talk to a professional." Notes of Testimony ("N.T."), 7/19/10, at 3; *see also id.* at 5 (wherein the court clarified that "it would be beneficial to have ... professional psychological or psychiatric testimony as well as observations of the alleged victim"). The court continued the hearing until July 28, 2010, at which time the Commonwealth proffered as its only witness Dr. Allison Hill, a licensed psychologist and counselor who had been working weekly with K.H. since January 2010. N.T., 7/28/10, at 6, 10. Dr. Hill opined that the child would not be able to testify in the presence of Appellant, basing her opinion on her conversations with K.H. and on her observations that K.H. had been unable to talk about what had happened to her or about the case for months, even in a non-threatening situation. *Id.* at 9–10.

Following cross-examination of Dr. Hill, defense counsel sought the opportunity to have his own expert review Dr. Hill's testimony. *Id.* at 15. Even though the trial court concluded that Dr. Hill's testimony was "extremely credible," and **found** that testifying in Appellant's presence would be "a traumatic experience [and] would be extremely harmful to [K.H.]," it nevertheless granted the defense motion and continued the hearing. *Id.* at 15–16. Subsequently, Appellant filed a motion to allow for a psychological examination of K.H. by his expert, Dr. Richard Small, in order to enable Dr. Small to render an opinion as to K.H.'s ability to testify in open court. Specifically, Appellant claimed that, by invoking Section 5985, the Commonwealth had "placed [K.H.'s] psychologi-

the 2003 amendment, and this Court affirmed. As the Commonwealth Court explained, the amendment was proposed after we had ruled that laws permitting children to testify outside the physical presence of the accused, *e.g.*, by closed circuit television, violated the Pennsylvania Constitution because such laws denied the accused the right to confront witnesses against him or her "face-to-face." *Bergdoll, supra* at 190. By removing the "face-to-face" language from the Pennsylvania Constitution and making the confrontation clauses of the Pennsylvania Constitution and the Sixth Amendment identical, the amendment was designed to permit the enactment of laws or the adoption of rules that would permit child victims or witnesses to testify in criminal proceedings outside the physical presence of the accused. *Id.* at 190–91.

cal status at issue and just as the Commonwealth would be entitled to seek an evaluation by [its] own expert if [Appellant] alleged incompetency or lack of criminal responsibility[,] so too [Appellant's] expert should be given access to [K.H.] in this circumstance." Motion to Allow for Psychological Examination of the Alleged Victim, filed 8/12/10, at ¶ 8.

At a hearing on August 13, 2010, the court inquired as to whether Dr. Small could obtain the information he needed by meeting with Dr. Hill. N.T., 8/13/10, at 3; *see id.* at 5 (wherein the court stated that it did not "see why [Dr. Small] can't get the information he wants directly from [Dr.] Hill. Of course for her to be able to talk to [Dr.] Small it'll have to be a proper waiver and consent by the mother to release the information."). The court did not grant the defense motion to allow Dr. Small to meet with K.H., but instead issued the following order:

[T]he court directs the District Attorney's Office to discuss with the alleged victim's mother that she provide all appropriate releases and authorization for the child's treating psychologist [Dr. Hill] to discuss all aspects of the child's diagnosis, prognosis and treatment to date with Dr. Richard Small.

Trial Court Order, dated 8/13/10; N.T., 8/13/10, at 7.

In the trial court's subsequent written expression, it further explained its order as follows:

[I]n an effort to perhaps avoid the necessity of Dr. Small personally interviewing the child, this court entered an Order compelling the child's mother to authorize Dr. Hill to provide documents, as well as discuss her diagnosis with the defense expert [Dr. Small].

Trial Court Statement in lieu of Opinion, dated 9/23/10, at 1–2.

The trial court concluded that Appellant had the right to present expert testimony to rebut the Commonwealth's evidence, based upon its incorrect understanding of the nature and extent of Appellant's right to confront witnesses. As stated by the court:

The right of the accused to confront witnesses against him is a right with roots dating back to English common law and Roman law. It is inconceivable to this court that a defendant could be denied that right without at least being given the opportunity to present his own expert testimony concerning a complainant's psychological state, especially where the Commonwealth is the very party putting that psychological state at issue.

*Id.* at 4.[3]

The Commonwealth appealed to the Superior Court, which reversed based on its reading of the statute. Appellant then filed a petition for allowance of appeal in this Court, which we granted, on the following issue:

Whether a Defendant has a right to present informed expert testimony to rebut the Commonwealth's evidence in support of its motion pursuant to 42 Pa.C.S.A. § 5985 to allow a child witness to testify in a room separate from courtroom proceedings?

616 Pa. 353, 47 A.3d 1173 (2012).

The issue presented is a question of law, and hence our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Crawley,* 592 Pa. 222, 924 A.2d 612, 614 (2007).

■ Under both the United States Constitution and the Pennsylvania Constitution, the right to confrontation specifically guarantees a person accused of a crime the right "to be confronted with the witnesses against him." United States Constitution, Sixth Amendment; Pennsylvania Constitution, Art. I, § 9. As the United States Supreme Court has explained, the right to confrontation is basically a trial right, and includes both the opportunity for cross-examination of the witnesses and the occasion for the jury to consider the demeanor of the witnesses. *Barber v. Page,* 390 U.S. 719, 725,

3. That the trial court was mistaken concerning the breadth of an accused's right to confrontation is manifest given the considerably more recent jurisprudence developed by the U.S. Supreme Court. *See* text *infra* for discussion of *Maryland v. Craig,* 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). "The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact." *Maryland v. Craig*, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990).

■ The high Court has held that, although the Confrontation Clause of the Sixth Amendment reflects a preference for face-to-face confrontation, face-to-face confrontation is neither an absolute nor an indispensable requirement. *Id.* at 844–50, 110 S.Ct. 3157.[4] When necessary to further an important public policy and where the reliability of the testimony in question is otherwise assured, the preference for face-to-face confrontation must give way to public policy considerations and the necessities of the case. *Id.* at 849–50, 110 S.Ct. 3157.

The question in Craig was whether a child victim of sexual assault could constitutionally testify outside the physical presence of the accused. *Id.* at 840, 110 S.Ct. 3157 (phrasing the issue as "whether the Confrontation Clause of the Sixth Amendment categorically prohibits a child witness in a child abuse case from testifying against a defendant at trial, outside the defendant's physical presence, by one-way closed circuit television"). The *Craig* defendant challenged the constitutionality of a Maryland statute permitting a child victim to testify via closed circuit television in cases where the trial judge determines that "testimony by the child victim in the courtroom will result in the child suffering serious emotional distress such that the child cannot reasonably communicate." *Id.* at 841, 110 S.Ct. 3157 (citing Md.Cts. & Jud.Proc.Code Ann. § 9–102(a)(1)(ii)). The high Court stressed that the Maryland statute, while eliminating the requirement for face-to-face confrontation under certain circumstances, preserved nearly all of the other elements of the right to confrontation: "The

4. Likewise, this Court has acknowledged that the right to confrontation, while fundamental, is not absolute. *Commonwealth v. Wholaver*, 605 Pa. 325, 989 A.2d 883, 900–05 (2010) (discussing the "forfeiture by wrongdoing" exception in the context of the Confrontation Clause and upholding the trial court's admission at trial of the preliminary hearing testimony of two murder victims).

child witness must be competent to testify and must testify under oath; the defendant retains full opportunity for contemporaneous cross-examination; and the judge, jury, and defendant are able to view (albeit by video monitor) the dèmeanor (and body) of the witness as he or she testifies." *Id.* at 851, 110 S.Ct. 3157. Therefore, by preserving these elements of the right to confrontation, the Maryland statute "adequately ensures that the [minor's] testimony is both reliable and subject to rigorous adversarial testing in a manner functionally equivalent to that accorded live, inperson testimony." *Id.; see also id.* at 846–47, 110 S.Ct. 3157. Under these circumstances, and where the trial court has made a finding of necessity, the preference for face-to-face confrontation may be abridged, and the Confrontation Clause does not prohibit the use of a closed-circuit television procedure to receive the testimony of a child victim of abuse. *Id.* at 849–50, 855–59, 860, 110 S.Ct. 3157. Likewise, Section 5985 sets forth circumstances under which face-to-face confrontation of child victims/witnesses may be eliminated, but it preserves the crucial confrontation elements of oath, full cross-examination, and observation by judge, jury, and defendant. Nor does Section 5985 alter the requirement that a child witness be examined for competency. *See Commonwealth v. Delbridge,* 578 Pa. 641, 855 A.2d 27, 39 (Pa.2003).

Here, Appellant sought to present expert testimony to rebut the opinion testimony of Commonwealth witness Dr. Hill. The trial court concluded that Appellant had the right to present expert testimony in the Section 5985 hearing because it was the only way he could rebut the Commonwealth's evidence concerning K.H.'s psychological state, a matter that, in the trial court's opinion, the Commonwealth had placed at issue. Trial Court Statement *in lieu* of Opinion at 3–4. The Superior Court reversed, and concluded that nothing in subsection 5985(a.2)(2) grants a defendant the right to have a defense expert either examine the child or present rebuttal testimony. Accordingly, the Superior Court concluded that the trial court had abused its discretion when it "ordered the alleged minor victim's mother to waive her daughter's psychologist-patient

privilege, so that [Appellant] could impeach Dr. Hill's opinion at the hearing with his own expert." *Commonwealth v. Williams*, No. 1357 MDA 2010, (Pa.Super., filed 5/13/11), Slip Opinion at 13. Appellant asserts that the Superior Court's interpretation of Section 5985 resulted in a violation of his constitutional rights to confront the witnesses against him and to due process.

■ We first consider Appellant's argument as to the right to confrontation. Undergirding this argument is the contention that a Section 5985 proceeding constitutes a "critical stage" of the criminal proceedings, and, therefore, an accused is entitled not only to the effective assistance of counsel, but also to the full panoply of Sixth Amendment rights, rights also protected by Article 1, Section 9 of the Pennsylvania Constitution.[5] Appellant's Brief at 8–11 (citing *Commonwealth v. Cox*, 603 Pa. 223, 983 A.2d 666, 680 (2009), and *Montejo v. Louisiana*, 556 U.S. 778, 786, 129 S.Ct. 2079, 173 L.Ed.2d 955 (2009), for the principle that an accused has the right to counsel at all critical stages of a prosecution); *see also Commonwealth v. Johnson*, 574 Pa. 5, 828 A.2d 1009, 1014 (2003) ("There is no doubt that the right of counsel applies to all 'critical stages' of a criminal proceeding.") (citation omitted). Appellant further argues that the right to counsel "is aimed to ensure that other 6th Amendment rights—including compulsory process and the right to confront witnesses—are protected." Appellant's Brief at 8.

■ In Appellant's view, a Section 5985 proceeding is a critical stage because it may result in the loss of his substantive right to confront his child accuser face-to-face at his preliminary hearing (and presumably at trial as well).[6] *Id.* at

5. Appellant does not set forth separate and distinguishable arguments under the federal and state Constitutions. We therefore consider his assertions of federal and state constitutional violations concurrently.

6. Appellant also argues that the drafters of Section 5985 implicitly acknowledged that a Section 5985 hearing was a critical stage because of the statute's express guarantee that a defendant's counsel had the right to be present at the hearing. 42 Pa.C.S. § 5985(a.2). Appellant's argument fails as a matter of logic and of law. While Appellant correctly asserts that a defendant is entitled to counsel at each critical

12. Although Appellant's argument proceeds in several steps, the entire edifice is based on his underlying assertion that a Section 5985 hearing is a "critical stage" of the criminal proceeding.[7] A review of precedent from the United States Supreme Court and this Court demonstrates that Appellant's underlying assertion is incorrect. As Appellant recognizes, *see* Appellant's Brief at 11, "[a] critical stage is a point in the proceeding at which substantive rights may be preserved or lost." *Commonwealth v. Holzer*, 480 Pa. 93, 389 A.2d 101, 107 (1978); *see also Commonwealth v. Wright*, 599 Pa. 270, 961 A.2d 119, 133 (2008) ("A 'critical stage' is one in which the accused's substantive rights may be affected."); *Coleman v. Alabama*, 399 U.S. 1, 9, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970) (reiterating that the "determination whether the hearing is a 'critical' stage requiring the provision of counsel depends [ ] upon an analysis [of] whether potential substantial prejudice to defendant's rights inheres in the confrontation and the ability of counsel to help avoid that prejudice") (citation and internal quotation marks omitted).

Based on the United States Supreme Court's holding in *Craig, supra*, we conclude that a Section 5985 hearing is **not** a critical stage. Contrary to Appellant's assertions, his substantive right "to be confronted with the witnesses against him," as guaranteed under the Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution, is not subject to preservation or loss in a Section 5985 hearing. We determine that Appellant's right to be confronted at the preliminary hearing by the minor victim would not be violated by her testifying under oath via closed-circuit television because Appellant retains the opportunity to cross-examine her via his counsel, and both Appellant and the

stage of the criminal proceedings against him or her, neither logic nor any precedent supports the notion that a statutory guarantee of defense counsel's right to be present for a particular type of proceeding necessarily implies that the proceeding is a critical stage.

7. We observe that Appellant's argument would presumably have been less prolix had he addressed, or at least acknowledged the existence of, *Maryland v. Craig*, 497 U.S. 836, 845, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), in his brief.

fact-finder retain the ability to observe K.H. throughout her testimony. The only element of this process that is at all different from the norm is the absence of "face-to-face" confrontation, a type of confrontation which the high Court in *Craig* made clear in neither absolute nor indispensable. Therefore, we hold that because the Section 5985 hearing is not a critical stage of the criminal proceeding, Appellant's confrontation clause rights are not violated by precluding him from obtaining access to information about the minor victim's medical and psychological history, nor are they violated by precluding the presentation of defense expert testimony.

Alternatively, Appellant asserts a due process right to access information and present expert testimony as to K.H.'s mental health diagnosis, treatment, and prognosis in order to rebut the testimony of the Commonwealth's witness, Dr. Alison Hill, at the Section 5985 hearing. Appellant's Brief at 14–15. Appellant relies on the due process guarantee of "fair proceedings" to assert that he has the right to access the "informational basis" of Dr. Hill's opinion testimony as well as the right to present in rebuttal the testimony of his own expert. *Id.* at 14; *see id.* ("[I]t would be fundamentally unfair to allow the Commonwealth to present expert testimony in support of its position[,] and then deny [Appellant] access to the informational basis of the expert opinion and prohibit [Appellant] from calling his own expert witness to rebut the Commonwealth's claim."). In Appellant's view, "by moving under 42 Pa.C.S.A. § 5985 to allow K.H. to testify via closed circuit television and presenting the testimony of K.H.'s psychologist in support of this motion, the Commonwealth has placed K.H.'s therapeutic condition at issue." *Id.* at 19; *see also id.* ("... the Commonwealth put K.H.'s psychological condition at issue...."). In response, the Commonwealth argues that K.H.'s mental health was not at issue in the Section 5985 hearing. Commonwealth's Brief at 8–12. Furthermore, the Commonwealth reasons, Appellant has failed to establish how K.H.'s mental health diagnosis, treatment, and prognosis were or are relevant to the only matter at issue in a Section 5985 hearing, to wit, whether testifying in the pres-

ence of Appellant would cause her to suffer serious emotional distress such that her ability to reasonably communicate would be substantially impaired. *Id.* at 8.

To address the parties' arguments, we begin by interpreting the relevant provisions of the statute. The object of all statutory interpretation is to ascertain and effectuate the intention of the General Assembly. 1 Pa.C.S. § 1921(a). When the words of a statute are clear and unambiguous, we must give effect to those words. 1 Pa.C.S. § 1921(b). When the words of a statute are not explicit, we may consider, *inter alia*, the following in order to ascertain the intention of the General Assembly: the occasion and necessity for the statute; the circumstances under which it was enacted; the mischief to be remedied; the object to be attained; and the consequences of a particular interpretation. 1 Pa.C.S. § 1921(c). We assume that the General Assembly does not intend to violate the federal or state Constitution. 1 Pa.C.S. § 1922(3).

Applying these principles to the interpretation of Section 5985 in the context of Appellant's due process argument, we conclude that he is not entitled to relief because he has misunderstood the narrow and highly focused judicial inquiry set forth in 42 Pa.C.S. § 5985, which balances the state's interest in protecting a child who is the victim of a crime against the constitutional interest of the accused in confronting the witnesses against him or her. Section 5985 delineates the standard the court must apply and the process the court must employ in reaching its decision as to whether a child will be permitted to testify via contemporaneous alternative method. As we explain *infra*, the trial court abuses its discretion if it allows a Section 5985 hearing to become a wide-ranging, unfocused inquiry, in the manner of a fishing expedition, into the overall, general mental health of the child in question.

Under subsection 5985(a.1), before the trial court orders the testimony of a child victim to be taken by a contemporaneous alternative method, the court must engage in a practical inquiry; *i.e.*, the court must determine whether the ability of the child victim to reasonably communicate would be substantially impaired by serious emotional distress resulting from

testifying in the defendant's presence. 42 Pa.C.S. § 5985(a.1). The court bases its determination as to the child's ability to testify in the presence of the defendant "on evidence presented to it." *Id.* The statute explicitly sets forth several evidentiary options: the court may observe and question the child, and/or the court may hear testimony of the child's parent or custodian or any other person, such as a medical professional or therapist. *Id.* at (a.1)(1) and (a.1)(2). Based on these provisions, and in the absence of definitive statutory guidance to the contrary, we conclude that, in a Section 5985 hearing, as in other types of proceedings, the legislature intended that evidence is admissible at the discretion of the trial court.

An evidentiary matter that is unmistakably clear from subsection 5985(a.1) is that testimony from a psychologist, therapist, or other health care professional who has dealt with the child is neither barred from nor required in a Section 5985 hearing. It is of no small import that expert testimony is *not required* to establish a finding of "serious emotional distress." From this fact, we must infer that the General Assembly employed the term "serious emotional distress" in its plain, common sense, lay meaning, and did not intend to imply a specific mental health diagnosis, condition, or prognosis which could only be established by the testimony of a psychologist, psychiatrist, or other mental health expert. Thus, as used in subsection 5985(a.1), "serious emotional distress that would substantially impair the child victim's . . . ability to reasonably communicate" refers to a state or characteristic that can be recognized and attested to by the child's parent or custodian, or another person, such as one who has dealt with the child in a medical or therapeutic setting, or by the court alone after it observes and questions the child. The plain purpose of subsection 5985(a.1) is to set forth the court's obligation to inform itself regarding the necessity to avoid serious emotional distress to the witness so that the witness is able to reasonably communicate.

Accordingly, from the plain terms of the statute and the procedural scheme set forth therein, we conclude that the Commonwealth does not place a child's overall mental health,

psychological or therapeutic condition, or psychiatric/psychological diagnosis, treatment, or prognosis at issue merely by requesting a Section 5985 hearing. Rather, the child's mental health, psychological or therapeutic condition, diagnosis, treatment, and prognosis are at issue only to the extent that the Commonwealth relies on them to establish that the child's ability to reasonably communicate during his or her testimony would be impaired by the defendant's presence.

These conclusions find support in the legislative policy of protecting children during their involvement with the criminal justice system in cases. In relevant part, the statute provides:

§ 5981. Declaration of policy

In order to promote the best interests of the children of this Commonwealth, especially those children who are material witnesses to or victims of crimes, the General Assembly declares its intent, in this subchapter, to provide these children, where necessity is shown, procedures which will protect them during their involvement with the criminal justice system.

42 Pa.C.S. § 5981.

While requiring that the court find "necessity" in order to allow a child to testify via contemporaneous alternative method, the statute does not sanction a broad and searching inquiry into all aspects of the child's mental health, psychological or therapeutic condition, diagnosis, treatment, and prognosis. Such an encompassing inquiry could rapidly devolve into a lengthy adversarial proceeding resembling a trial, with experts dueling over the psychological status of the child, delving into the child's entire medical history, and subjecting the child to multiple psychological interviews and tests. Such a circumstance is neither consistent with the goals of and policy behind the statute, nor sanctioned by the procedures set forth in the statute. Furthermore, such a trial-like proceeding is not necessary to preserve the defendant's constitutional right to confrontation or due process. As the U.S. Supreme Court has explained in *Craig, supra* at 849–50, 110 S.Ct. 3157, the preference for face-to-face confrontation must give way to

public policy considerations and the necessities of the case when important public policy concerns, such as the protection of children, are at stake, and the reliability of the testimony in question is otherwise assured. The interests of the accused are protected by Section 5985's mandates preserving the crucial confrontation elements of oath, full cross-examination, and observation of the child witness by judge, jury, and defendant. *Id.* We infer nothing from the text of the statute or from *Craig* to suggest that a full-blown, adversarial, trial-like proceeding is appropriate—much less required—before the court can make the statutorily mandated finding of necessity, and based thereon, allow the child to testify via contemporaneous alternative method.

■ We now consider the application of Section 5985 to the facts of instant case. In its motion to allow K.H. to testify at Appellant's preliminary hearing via closed-circuit television pursuant to Section 5985, the Commonwealth relied solely on its own observations of K.H. during its interview with her. The Commonwealth averred that K.H. had indicated that she would not be able to say at trial what had happened to her if Appellant were present in the courtroom because she was "too scared" of him. In addition, the Commonwealth averred that, when it had mentioned that Appellant would be in the courtroom, K.H. had "curled up in a 'ball' on the chair [and] remained in this 'infantile' position until the conversation changed away from [Appellant's] presence in the courtroom during [her] testimony—[at which time her] legs automatically returned to the normal manner of sitting on a chair." Commonwealth's Motion Requesting Preliminary Hearing/Courtroom Testimony by Closed–Circuit Television, dated 7/1/10, at ¶¶ 4–5.

As we have related, *supra,* at the hearing on the Commonwealth's motion, the trial court stated its preference to hear testimony from a professional psychologist or psychiatrist. N.T., 7/19/10, at 3, 5. Accordingly, at the subsequent Section 5985 hearing, the Commonwealth called as its only witness Dr. Alison Hill, a licensed psychologist and professional counselor, who had met regularly with K.H. over the course of the

previous six months. N.T., 7/28/10, at 6, 10. Following Dr. Hill's testimony concerning her credentials, the entirety of Dr. Hill's direct examination was as follows:

*Prosecutor:* Did you speak with [K.H.] about providing testimony in this case?

*Dr. Hill:* Yes, I have.

*Prosecutor:* And based on your conversations with her, have you formed an opinion about whether she can testify about the allegations in this case in front of a jury and in the presence of [Appellant]?

*Dr. Hill:* Yes, I have.

*Prosecutor:* And what is that opinion?

*Dr. Hill:* My opinion after talking with [K.H.] about this situation is that she would not be able to testify in front of a judge and in front of [Appellant] in court.

*Prosecutor:* And what is that based on?

*Dr. Hill:* My conclusion is based on the fact that I have been working with [K.H.] since January. I've established a relationship with her. She feels comfortable talking with me. But that has taken some time to transpire.

She is a quiet, shy 9-year-old girl who lacks confidence in herself, clearly feels anxious and nervous around strangers, people she does not know. When she becomes anxious, she shuts down emotionally. She essentially cannot speak, almost to the point basically of paralysis.

I've observed that in my work with her as related to her talking about certain topics, specifically topics related to this case. And she has often been unable to get the words out. She's literally unable to speak. It has taken her from January until June to be able to talk to me about this case. And that has been within the confines of my office, just [K.H.] and myself talking together in a nonthreatening situation.

\* \* \* \* \* \*

*The Court:* ... to a degree of professional psychological certainty, it is your unequivocal opinion that testifying in

open court with [Appellant] present would be harmful to this child?

*Dr. Hill:* Yes. I believe that it would be.

*The Court:* All right, to her mental and physical well-being?

Dr. Hill: Yes, absolutely, Your Honor.

*Id.* at 9–11.

On cross-examination of Dr. Hill, defense counsel asked whether there was a diagnosis associated with her opinion that K.H. would suffer serious emotional distress as a result of testifying in the presence of Appellant. Dr. Hill answered that she "would diagnose [K.H.] with adjustment disorder with anxiety in that situation because it would be related to a specific situation." *Id.* at 11. Defense counsel also questioned the distinction between the trauma to K.H. associated with testifying and the trauma associated with the sexual assault allegations. Dr. Hill responded that testifying in court "would add onto the trauma [K.H.] has already experienced" from the alleged incidents. *Id.* at 12–13. Defense counsel then returned to the issue of K.H.'s psychiatric diagnoses and asked whether she suffered from "depression or suicidal thoughts or anything else besides this particular acute situation." *Id.* at 13. The Commonwealth objected to this line of questioning, arguing that it had nothing to do with the standard to be applied and was not relevant. *Id.* The trial court overruled the Commonwealth's objection, and Dr. Hill then responded that she "had not seen any other diagnoses at this time." *Id.*

Appellant claims that fundamental fairness entitles him to access all of the information ordered by the trial court and then to present rebuttal expert testimony based on this information. Appellant's Brief at 14, 19–20. As previously noted, despite its conclusion that Dr. Hill's testimony was extremely credible and its **finding** that K.H. would be subjected to a traumatic experience that would be extremely harmful to her if she were required to testify in Appellant's presence, the trial court nevertheless granted the defense motion for a continuance to allow it the opportunity to have an expert review Dr. Hill's testimony and possibly to present additional

evidence. *Id.* at 15–16. In so expanding the scope of the Section 5985 hearing, we hold that the trial court abused its discretion.

We are convinced that, in the absence of a right to face-to-face confrontation, the procedures found adequate in *Craig* to protect an accused's confrontation rights suffice to give adequate protection here to Appellant's due process rights. There is no question that Appellant had ample opportunity to cross-examine Dr. Hill concerning the basis for her opinion and any other matter, and he did so vigorously. A Section 5985 hearing is not intended to become a mini-trial on the general mental health status of the child, nor a fishing expedition into the child's mental health history. Thus, we hold that the trial court abused its discretion by granting Appellant access to all aspects of K.H.'s mental health diagnosis, treatment, and prognosis for the purpose of rebutting Dr. Hill's testimony via the testimony of his own expert. We further hold that a defendant does not have a right to present informed expert testimony to rebut the Commonwealth's evidence in support of its motion pursuant to 42 Pa.C.S. § 5985 to allow a child witness to testify in a room separate from courtroom proceedings.[8]

Concluding that neither of Appellant's constitutional claims has merit, we affirm the order of the Superior Court.

Chief Justice CASTILLE and Justices BAER and STEVENS join the opinion.

8. Our resolution is not inconsistent with decisions from other jurisdictions. *See People v. Biavaschi,* 265 A.D.2d 268, 697 N.Y.S.2d 53, 54 (1999) (upholding the denial of a defense motion for an independent psychological examination of a child witness prior to the determination of whether the witness would be permitted to testify via closed circuit television based upon a statute that explicitly provided that such a witness may not be compelled to undergo a psychiatric or psychological examination); *In the Matter of Noel O.,* 19 Misc.3d 418, 855 N.Y.S.2d 318, 325 (N.Y.Fam.Ct.2008) (citing *Biavaschi* and the relevant statute for same proposition); *State v. Michaels,* 264 N.J.Super. 579, 625 A.2d 489, 503–05 (App.Div.1993) (upholding the denial of a defense motion to conduct a psychiatric examination of minor victims of sexual assault in order to respond to the state's motion to have the children testify via closed circuit television).

Chief Justice CASTILLE files a concurring opinion.

Justice EAKIN files a concurring and dissenting opinion.

Justice SAYLOR files a dissenting opinion in which Justice TODD joins.

## CONCURRING OPINION

Chief Justice CASTILLE.

I join the Majority Opinion in rejecting appellant's constitutionally-based arguments. I write separately to explain why I am satisfied to join, notwithstanding the manner in which the issue in this case has presented itself, and also to address the tangential questions that have arisen during the process of consideration and decision by this Court.

The trial court order at issue is brief, consisting of a directive that the District Attorney's Office "discuss" with the complainant's mother whether the mother would "provide all appropriate releases and authorization for the child's treating psychologist to discuss all aspects of the child's diagnosis, prognosis and treatment to date with Dr. Richard Small," appellant's expert. Implicit in the order is that if the mother did not agree to waive her child's privilege, the child would not be permitted to testify by closed circuit television, but instead would have to face her alleged abuser face-to-face in the courtroom, beginning with the preliminary hearing. The order did not go as far as appellant had requested: he had asked the court for permission to have his own expert interview the child, so that his expert could testify in rebuttal.

Not surprisingly, the Commonwealth appealed the interlocutory order. In response, the trial court's brief statement in lieu of an opinion, quoted by the Majority, see Maj. op. at 187–89, 84 A.3d at 683–84, made two points of relevance: (1) the order was bottomed squarely and exclusively upon the right of confrontation; and (2) the purpose of the coercive disclosure was to give appellant "the opportunity to present his own expert testimony concerning [the] complainant's psychological state." The court's statement, although adverting generically

to "English common law and Roman law," betrayed no awareness of contemporary American constitutional law involving the right of confrontation; indeed, the statement was unsupported by citation to, or discussion of, any relevant authority.

The Commonwealth's appeal to the Superior Court, which was accepted by that tribunal as an appropriate collateral order subject to immediate appeal under Pa.R.A.P. 313 (for obvious reasons given the privilege of the child at issue), raised two issues. First, the Commonwealth argued that the trial court erred in deciding to compel the release of the child's confidential psychological records for analysis by the defense expert premised simply upon the request that the child be permitted to testify by closed circuit television. Second, the Commonwealth contended that the trial court violated the child's constitutional rights by forcing her mother to waive any privilege the child may have. The Superior Court reversed on the first issue, and did not reach the second.

The core of the Superior Court's analysis was statutory. The panel held that Section 5985 of the Judicial Code—the statute authorizing testimony by child victims or witnesses by "contemporaneous alternative method"—provides that the defendant's counsel has the right to be present at the hearing concerning the child's emotional ability to testify at trial in the presence of the defendant. Super. Ct. Op. at 12–14 (citing 42 Pa.C.S. § 5985(a.2)(2)). But, Section 5985 does not confer a right upon defendant to have his expert examine the child or to have his expert present testimony to contradict the Commonwealth's expert. The panel "decline[d] to look beyond the statute's plain meaning to find such a right." *Id.* at 13. The panel never mentioned nor did it directly engage the trial court's statement concerning the Confrontation Clause, upon which the decision below was grounded, albeit the panel did discuss Superior Court decisional authority which held that the right to confrontation and compulsory process are not violated by denying access to psychotherapeutic records. As Mr. Justice Saylor explains, the Superior Court's approach in this case was not optimal: the panel did not engage the constitutional question directly nor did the panel discuss the

fact that the absence of an affirmatively granted statutory right to that review which the trial court ordered does not equate to the absence of any basis upon which the trial court would be authorized to order such relief.

This Court accepted the interlocutory appeal for further review. Appellant framed the issue as whether a defendant has a "right" to present informed expert testimony to rebut the Commonwealth's evidence in support of its motion to allow the child to testify by closed circuit television. In his brief to this Court, appellant does not root his claim in the Confrontation Clause. Appellant argues that his right derives from the right to counsel (which he says subsumes other rights including compulsory process and confrontation) and also due process. Notably, appellant never acknowledges, discusses, nor attempts to distinguish *Maryland v. Craig*, 497 U.S. 836, 110 S.Ct. 3157, 111 L.Ed.2d 666 (1990), which forecloses relief upon his claim on appeal, as the Majority explains. Just as notably, the trial court, which also did not acknowledge *Craig*, did not base its ruling upon due process or the generalized right to counsel suggested by appellant. One does not need a lawyer in order to confront witnesses; defendants permitted to proceed *pro se* do it all the time.

In response, the Commonwealth engages appellant's various arguments on the merits, not objecting to the fact that appellant's current theories do not necessarily track the trial court's confrontation clause ruling and, presumably, appellant's arguments to the trial court.

Because the Commonwealth does not object to the expansion of the interlocutory appeal to include other theories, and the theories have been briefed here, I have no objection to the Majority's decision to address the broader constitutional claims placed before us. It is a separate theoretical question, not currently before us, whether the trial court had some other discretionary authority to issue the order it issued, in the face of the child victim's own rights, for purposes of discharging its duty under the statute. In light of narrow scope of the interlocutory appeal before us, I would not venture to decide these tangential issues.

## CONCURRING AND DISSENTING OPINION

Justice EAKIN.

I agree with the majority's holding a defendant does not have the *right* to present expert rebuttal testimony to the Commonwealth's evidence at a hearing under 42 Pa.C.S. § 5985. This was the question on which we granted review, *see Commonwealth v. Williams,* 616 Pa. 353, 47 A.3d 1173 (2012) (*per curiam*), and which appellant raised in his briefs and at argument. *See* Appellant's Brief, at 4.

However, the scope of the trial court's order in the instant matter was not so broad, on its face, that it encompassed having appellee's expert testify, much less acknowledging a right to do so; the order merely granted appellee the ability to have "the child's treating psychologist D discuss all aspects of the child's diagnosis, prognosis and treatment to date with [appellant's expert]." Trial Court Order, 8/13/10. That said, the record reveals the court's intention in fashioning the order was to grant appellee's expert access to information in order to prepare rebuttal testimony. *See* Trial Court Statement in Lieu of Opinion, 9/23/10, at 4 (emphasis added) ("It is inconceivable ... that a defendant could be denied [his confrontation] right without at least being given the opportunity to *present his own expert testimony* concerning a complainant's psychological state ...."). While I agree there is no statutory right to present an expert witness at a § 5985 hearing, I find nothing impermissible in the directive of the order here, which simply granted access to the records and the Commonwealth's witness.

As Justice Saylor notes, there is a delicate balance between protecting the victim and protecting confrontation rights, both of which are acknowledged in our Constitution. The importance of the former needs no elucidation. The importance of the latter consists not only of the broad constitutional ramifications of denying face-to-face confrontation, but also the immediate pragmatic implications of going to trial before a jury that knows something is afoot when the most important witness is not in the courtroom. If the balancing decision is

not a "critical stage" in the sense of constitutional jurisprudence, it unquestionably is a critical stage in the pragmatic sense of how the trial will proceed. Granting the motion in derogation of the confrontation rights on balance may not be unconstitutional in a given case, but it will without question hamper the actual in-court defense to a not insignificant degree.

The matter is brought to issue by the Commonwealth's brief, which alleges certain facts, and the conclusion the Commonwealth wishes this Court to reach. The statute allows the trial court to determine the witnesses it wishes to consider, but if (as here) that includes persons other than the child, it is the Commonwealth that not only presents that evidence, but which tells the court what witnesses there are. While the statute is silent on this point, obviously one party only, the Commonwealth, gets to tell the court what witness could provide potentially relevant information that supports the motion—the court has no investigators, no information beyond the Commonwealth's filing. Obviously, the Commonwealth witnesses will support the motion—they may have led to the motion in the first place. That is not to say this is done in bad faith, but the process is unilateral in nature, which fact is hardly inconsequential.

Perhaps understanding this, the court here thought the fairness of its decision-making might be enhanced by allowing the accused certain limited access to the witness the Commonwealth offered, and to the witness's information. This was held improper by the Superior Court, and the majority, because the statute does not provide for presentation of defense evidence. This is true, but neither does the statute provide for the Commonwealth to present evidence—yet present it did. The statute simply allows the court to "hear testimony"—it is silent on the source of that testimony. It may not expressly allow evidence, but neither does it prohibit such evidence.

I am uncertain why there is conceptual opposition to allowing the court, faced with a difficult and transcendent decision, to get as much information as it can, and to consider a

potentially alternate viewpoint, if there is one. The entire hearing is optional with the court, and the lack of specific process bespeaks flexibility to hear that which the court thinks is appropriate or helpful. This is not consistent with permitting the court to hear only testimony which is prepared and presented by the moving party, insulated from meaningful examination by the party whose constitutional rights are directly being limited.

As worded in the order, the child would not be subjected to examination by appellant's expert; appellant's expert was not given permission to testify. There are many reasons for retaining an expert, other than as a witness. An expert may offer educational consultation, or opinions that will be useful in evaluating or cross-examining the opposing witness and in generally preparing for the subject matter of the hearing. There is nothing in § 5985 precluding such use of an expert, nor of making information available to them.

Thus, I agree with the majority's answer to the question as framed, that the defendant has no right to present evidence at a § 5985 proceeding, but disagree with the view that a defendant is prohibited from doing so. To make the hearing at all meaningful, I would acknowledge the authority of the court to allow such evidence, as well as access by both parties to appropriate information that the court feels would be helpful to its decision-making responsibilities.

## DISSENTING OPINION

Justice SAYLOR.

Presently, there is much uncertainty in Sixth Amendment Confrontation Clause jurisprudence, in light of differences in tone and direction set by various rulings of the United States Supreme Court. Several decisions seem to be of particular relevance here.

First, in *Coy v. Iowa*, 487 U.S. 1012, 108 S.Ct. 2798, 101 L.Ed.2d 857 (1988), authored by Justice Scalia, the Court strongly emphasized the "literal right to 'confront' the witness at the time of trial" as forming "the core of the values

furthered by the Confrontation Clause," *id.* at 1017, 108 S.Ct. at 2801 (quoting *California v. Green,* 399 U.S. 149, 157, 90 S.Ct. 1930, 1934–35, 26 L.Ed.2d 489 (1970)), and repeatedly admonished that "the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact." *Id.* at 1016, 108 S.Ct. at 2801; *accord Pennsylvania v. Ritchie,* 480 U.S. 39, 51, 107 S.Ct. 989, 998, 94 L.Ed.2d 40 (1987) (stating that "[t]he Confrontation Clause provides two types of protections for a criminal defendant: *the right physically to face* those who testify against him, and the right to conduct cross-examination"). The Court explained, "there is something deep in human nature that regards face-to-face confrontation between accused and accuser as 'essential to a fair trial in a criminal prosecution,'" *Coy,* 487 U.S. at 1017, 108 S.Ct. at 2801 (quoting *Pointer v. Texas,* 380 U.S. 400, 404, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965)), in that a witness "may feel quite differently when he has to repeat his story looking at the man whom he will harm greatly by distorting or mistaking the facts." *Id.* at 1019, 108 S.Ct. at 2802 (quoting, indirectly, Z. Chafee, The Blessings of Liberty 35 (1956)).

Several years later, however—over Justice Scalia's forceful dissent—a majority of the Supreme Court recharacterized what was said in Coy to be an essential guarantee of face-to-face confrontation as a constitutional "preference." *Maryland v. Craig,* 497 U.S. 836, 849, 110 S.Ct. 3157, 3165, 111 L.Ed.2d 666 (1990). In doing so, the majority borrowed heavily from *Ohio v. Roberts,* 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980), *overruled* by *Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), *see Craig,* 497 U.S. at 847–50, 110 S.Ct. at 3164–66, a seminal Sixth Amendment decision which had heralded the intermixing of Confrontation Clause and hearsay doctrine. *See generally* Clifford S. Fishman and Anne T. McKenna, 4 JONES ON EVIDENCE § 25A:3 (7th ed. 2012). While the *Craig* Court adopted the more pragmatic, balancing-based approach applied by the majority here, it nevertheless "reaffirm[ed] the importance of face-to-face con-

frontation with witnesses appearing at trial[.]" *Craig*, 497 U.S. at 849, 110 S.Ct. at 3165–66.

More recently, Justice Scalia's view of the Confrontation Clause reemerged at the forefront, when the Supreme Court entirely revamped the judicial understanding of it in *Crawford*, jettisoning the particular form of pragmatism reflected in *Roberts* in favor of the more formalistic reading of the Sixth Amendment provision. *See Crawford*, 541 U.S. at 43, 54, 124 S.Ct. at 1359, 1365 (explaining that the constitutional text "is most naturally read as a reference to the right of confrontation at common law," with "[t]he common-law tradition [being understood as] one of live testimony in court subject to adversarial testing").

Courts and scholars continue to debate *Crawford* 's impact on *Craig*.[1] While I tend toward the prediction that the Supreme Court ultimately will not overrule *Craig*, one cannot read *Crawford* and Coy without appreciating the Supreme Court's sentiment that *Craig*-based decisions to override constitutionally favored face-to-face confrontation are important, high-stakes determinations. In other words, there should be little question that statutory provisions delineating methods for propounding testimony against an accused other than via face-to-face confrontation operate in a very sensitive area of constitutional law. Here, one of my main differences with the majority opinion is in the weight allocated to Appellant's interest in maintaining the entitlement to face-to-face confrontation, as compared to an alternative method (particularly in the majority's treatment of whether a Section 5985 hearing represents a critical stage of a criminal prosecution, *see* Majority Opinion, at 192–94, 84 A.3d at 686–87).

I view the circumstances of this case as follows. The trial court was faced with the difficult task of determining whether

1. *Compare, e.g.*, Eileen A. Scallen, *Coping with Crawford: Confrontation of Children and Other Challenging Witnesses*, 35 Wm. Mitchell L.Rev. 1558, 1592–93 (2009) (taking the position that *Crawford* should not be read to overrule *Craig* ), *with* David M. Wagner, *The End of the "Virtually Constitutional"? The Confrontation Right and Crawford v. Washington as a Prelude to Reversal of Maryland v. Craig*, 19 Regent U.L.Rev. 469 (2007) (suggesting the opposite view).

Appellant's right to confrontation should be diluted in order to protect a vulnerable witness. The trial judge clearly took the conflicting interests at stake very seriously and attempted to fill in the gaps left by an ambiguous and rather cryptic statutory regime by employing the adversary process as a means to obtain adequate information. *See, e.g., Commonwealth v. Williams,* No. CP06–MD–0960–2010, slip op. at 4 (C.P. Berks Sept. 23, 2010) ("The right of the accused to confront witnesses against him is a right with roots dating back to English common law and Roman law. It is inconceivable to this court that a defendant could be denied that right without at least being given the opportunity to present his own expert testimony concerning a complainant's psychological state, especially where the Commonwealth is the very party putting that psychological state at issue."). The trial court, however, made a controversial finding of a waiver of confidentiality in the child witness's treatment records based on the view that it was the child who was putting her own mental state at issue in the case. *See id.*[2]

2. The majority avoids direct treatment of the confidentiality and waiver issues by suggesting that a child witness's psychological diagnosis and treatment are collateral to a Section 5985 hearing. *See* Majority Opinion, at 200–01, 84 A.3d at 691. I respectfully differ with this perspective.

To the degree the majority proceeds on the belief that one aspect of an individual's emotional state (susceptibility to emotional distress from particular stimuli such as the courtroom setting or the presence of the accused) can be readily segregated from other aspects of the subject's psychological, emotional, and behavioral makeup, it offers no support for such a conclusion. Moreover, there is much evidence that emotions are more complex in character than the majority opinion portrays. *See, e.g.,* Paula Niedenthal, Silva Krauth-Gruber & Francois Ric, Psychology of Emotion: Interpersonal, Experiential And Cognitive Approaches 1–10 (2006) (discussing the difficulty of categorizing emotions and their composition from a number of component processes). Certainly there are policy reasons favoring limitations upon the depth of the inquiry into a child-witness's emotional state (to preserve confidentiality as best as possible and minimize harmful impact upon the child-witness). In some instances, a trial judge may also believe there are other available avenues of proof, or may consider the possibility of in *camera* review of records to determine whether there is a reasonable basis for pursuing alternative causes.

In terms of *relevance,* however, the governing statute places emotional attributes of child witnesses squarely in issue. *See* 42 Pa.C.S. § 5985(a.1) (providing for testimony by a contemporaneous, alternative method where a child-witness will suffer "serious emotional distress"

For its part, the Superior Court read Section 5985 as essentially precluding testimony by a defense expert, and, notably, it did so without specific reference to Appellant's constitutional rights or the balancing assessment required by federal constitutional law. *See Commonwealth v. Williams,* No. 1357 MDA 2010, slip op. at 13 (Pa.Super. May 31, 2011) ("[W]e decline to look beyond the statute's plain meaning to find such a right [to have a defense expert examine a child-witness or present testimony at a Section 5985 hearing]."). Since I find the statute to be silent or ambiguous in this regard, because the salient constitutional inquiry does require a balancing of interests, and as courts are to presume that the General Assembly does not intend to violate the Constitution, *see* 1 Pa.C.S. § 1922(3), I believe the Superior Court's reasoning is, at the very least, incomplete. Moreover, Appellant does not need to have a "right" to present expert testimony to benefit from an exercise of the trial court's discretion in permitting such evidence (as occurred here), and the Superior Court's decision does not seem to take this into account. For these reasons, I would, at the very least, vacate the Superior Court's order and remand for a fuller assessment.

Finally, the Superior Court memorandum opinion also contains an analysis of the trial court's waiver determination. Relying on *Commonwealth v. Kennedy,* 413 Pa.Super. 95, 604 A.2d 1036 (1992) (en banc), the court found the psychologist-patient privilege to be a very strong one. It did not appear, however, to consider that, in the present case, such privilege was not asserted in the first instance, upon the Commonwealth's direct examination of K.H.'s treating psychologist. Thus, again, I find the Superior Court's analysis to be materially incomplete.

This evolving area of the law has obviously presented difficult challenges for the courts, with many complex and

impairing the child's ability to reasonably communicate as a result of the defendant's or the finder of fact's presence). Moreover, and again, decisions of the United States Supreme Court require a forthright balancing of the important interest of safeguarding the child's emotional well-being against the also—important interests of the accused in vindicating the constitutional preference for face-to-face confrontation.

nuanced angles and contours. Thus, I believe we should be particularly cautious to avoid broad-scale rulings in the context of cases lacking directed and fully developed opinions and advocacy.

Justice TODD joins this dissenting opinion.