J-S06012-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

IN RE: B.B., A MINOR

APPEAL OF: B.B., A MINOR

IN THE SUPERIOR COURT OF
PENNSYLVANIA

No. 22 EDA 2014

Appeal from the Dispositional Order Entered December 12, 2013
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): 2013-304

BEFORE: BENDER, P.J.E., LAZARUS, J. and FITZGERALD, J.*

MEMORANDUM BY BENDER, P.J.E.: **FILED FEBRUARY 24, 2015**

Appellant, B.B., appeals from the December 12, 2013 dispositional order committing him to a juvenile detention facility, following the court's adjudicating him delinquent of the offenses of rape, aggravated indecent assault, and aggravated assault. Appellant seeks to raise a multitude of claims on appeal. Additionally, his counsel, Timothy Peter Wile, Esq., has filed a petition to withdraw and brief pursuant to ***Anders v. California***, 386 U.S. 738 (1967), as elucidated by our Supreme Court in ***Commonwealth v. McClendon***, 434 A.2d 1185 (Pa. 1981), and amended in ***Commonwealth v. Santiago***, 978 A.2d 349 (Pa. 2009). Upon review, we agree with counsel that Appellant's claims are frivolous. Accordingly, we affirm Appellant's dispositional order and grant counsel's petition to withdraw.

Appellant was adjudicated delinquent of the above-stated offenses based on the following facts:

> C.P. and [Appellant] were students at Wissahickon High School, Montgomery County, PA, and had been acquainted for approximately three or four years at the time the subject incident occurred. Their relationship was characterized as one of

---

*Former Justice specially assigned to the Superior Court.

friends. On the afternoon of April 29, 2013, the students were both in art class when [Appellant] asked C.P. if she wanted to go for a walk. C.P. admitted that she asked her teacher for a note to use the bathroom in order to leave class, and the two walked to the audion, a small auditorium, at the school. In the few minutes it took to walk from the classroom to the audion, C.P. testified that [Appellant's] speech turned "mumbly" and his eyes were "red." [Appellant] pushed C.P. onto the steps at the stage, pulled down her pants, pulled down his pants, and raped and sexually assaulted her. C.P. tried to get away, but [Appellant] held her. This incident lasted approximately five [to] six minutes, after which [Appellant] "ran away." C.P. immediately went to the school nurse's office, where she ultimately told the nurse of her rape by [Appellant].

Juvenile Court Opinion (JCO), 6/12/14, at 5 (citations to the record omitted).

After reporting the rape to the school nurse, C.P. "was taken to a hospital where her injuries were determined [to be] severe, some of the wors[t] the hospital doctor on duty and staff had ever seen, and required an epidural (typically used for childbirth) so as to perform an examination." JCO at 15 (citations to the record omitted). Ultimately, C.P. required sutures to repair the injuries to her vagina. *See* N.T. Adjudication Hearing, 10/8/13, at 14.

Based on these facts, the juvenile court adjudicated Appellant delinquent of the above-stated offenses. Prior to Appellant's dispositional hearing, he retained new counsel, Paul Tressler, Esq.[1] Following that proceeding, a dispositional order was entered committing Appellant to the

_____

[1] The Honorable Paul Tressler is a retired judge of the Court of Common Pleas of Montgomery County. For purposes of clarity, we will refer to him as Attorney Tressler herein, but note his distinction as a former trial court judge.

Northwestern Academy's Safety, Empathy, Treatment (SET) program. On Appellant's behalf, Attorney Tressler filed both a timely notice of appeal, as well as a timely Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Therein, Attorney Tressler raised 22 distinct claims. On June 12, 2014, the juvenile court issued a Rule 1925(a) opinion. On July 24, 2014, Attorney Tressler petitioned to withdraw from representing Appellant, which the juvenile court granted. Attorney Wile of the Montgomery County Office of the Public Defender then entered his appearance for Appellant on July 17, 2014. On October 15, 2014, Attorney Wile filed a petition to withdraw and a lengthy *Anders* brief. Attorney Wile also filed with this Court copies of letters he sent to both Appellant and Appellant's mother, informing them that he was seeking to withdraw and advising them that Appellant could proceed *pro se* on appeal or retain private counsel. On October 24, 2014, Appellant's mother and father filed a document entitled "'Urgent' Petition for Reconsideration of Additional Facts Filed by Prior Counsel." Therein, Appellant's parents asked that this Court "reconsider" the issues raised in Appellant's Rule 1925(b) statement and reject Attorney Wile's petition to withdraw.

"When faced with a purported *Anders* brief, this Court may not review the merits of the underlying issues without first passing on the request to withdraw." *Commonwealth v. Rojas*, 874 A.2d 638, 639 (Pa. Super. 2005) (quoting *Commonwealth v. Smith*, 700 A.2d 1301, 1303 (Pa. Super. 1997)).

- 3 -

Prior to withdrawing as counsel on a direct appeal under **Anders***,* counsel must file a brief that meets the requirements established by our Supreme Court in **Santiago***.* The brief must:

(1) provide a summary of the procedural history and facts, with citations to the record;

(2) refer to anything in the record that counsel believes arguably supports the appeal;

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

**Santiago***,* 978 A.2d at 361. Counsel also must provide a copy of the **Anders** brief to his client. Attending the brief must be a letter that advises the client of his right to: "(1) retain new counsel to pursue the appeal; (2) proceed pro se on appeal; or (3) raise any points that the appellant deems worthy of the court[']s attention in addition to the points raised by counsel in the **Anders** brief." **Commonwealth v. Nischan***,* 928 A.2d 349, 353 (Pa. Super. 2007), *appeal denied*, 594 Pa. 704, 936 A.2d 40 (2007).

**Commonwealth v. Orellana**, 86 A.3d 877, 880 (Pa. Super. 2014). After confirming that counsel has satisfied these requirements, this Court must then conduct its own review of the record and independently determine whether the appeal is, in fact, wholly frivolous. **Commonwealth v. Daniels**, 999 A.2d 590, 594 (Pa. Super. 2010).

Instantly, Attorney Wile's **Anders** brief provides a detailed summary of the procedural history and facts of Appellant's case with citations to the record. It also includes a discussion of each of the 22 issues Appellant presented in his Rule 1925(b) statement, and an explanation of Attorney

Wile's conclusion that an appeal on Appellant's behalf would be wholly frivolous. Attorney Wile supports his rationale with citations to the record, as well as relevant case law. He has also certified in his petition to withdraw that he sent a copy of his **Anders** brief to Appellant, along with letters advising both Appellant and his mother of the rights enumerated in **Nischan**, 928 A.2d at 353. Therefore, we conclude that Attorney Wile has complied with the requirements for withdrawal. Accordingly, we will now independently review the merits of Appellant's assertions, and also determine whether there are any other issues he could arguably present on appeal.

In Attorney Wile's **Anders** brief, he divides the 22 claims presented in Attorney Tressler's Rule 1925(b) statement into the following four general issues:

> [(I)] Is [Appellant's] adjudication of delinquency for the offences [*sic*] of rape, aggravated indecent assault, and aggravated assault supported by legally sufficient evidence of record?
>
> [(II)] Did the Commonwealth's attorney engage in prosecutorial misconduct?
>
> [(III)] Did the juvenile court's errors deprive the juvenile of a fair trial?
>
> [(IV)] Was [Appellant's] adjudication counsel ineffective, thus entitling [Appellant] to a new adjudication hearing on all of the charges?

**Anders** Brief at 5. We will address each of these issues in turn.

## I. Sufficiency of the Evidence

After carefully reviewing the certified record, Attorney Wile's **Anders** brief,[2] the juvenile court's opinion, and the applicable law, we conclude that the decision of the Honorable R. Stephen Barrett of the Court of Common Pleas of Montgomery County accurately disposes of Appellant's challenge to the sufficiency of the evidence. **See** JCO at 14-17. Accordingly, we adopt Judge Barrett's rationale as our own in concluding that Appellant's challenge to the sufficiency of the evidence is frivolous.

## II. Prosecutorial Misconduct

Appellant's general claim of prosecutorial misconduct encompasses the following six discrete claims:

1. The Commonwealth withheld materials related to scientific analysis of evidence submitted to a laboratory via a "Rape Kit, which, upon information and belief, was exculpatory;["]

2. The Commonwealth provided inaccurate video representations of the physical actions of [Appellant] and the alleged Victim immediately following the alleged incident, which were misleading in that these representations were in "slow motion" and as such it was impossible to determine whether the person[s] depicted were engaged in normal ambulation, slow walking, accelerated walking, running or some combination thereof;

3. The Commonwealth failed to preserve and then produce the alleged Victim's school "Agenda Book[,"] knowing [the] same to be a critical piece of potentially exculpatory evidence as to the alleged Victim's departure time from a classroom immediately prior to the alleged incident, her reason for leaving, and her truthfulness. Further, knowing the existence of said Agenda

_____

[2] We note that the Commonwealth filed a letter, in lieu of a formal brief, notifying this Court that it agrees with Attorney Wile that Appellant's claims are frivolous.

Book, and its import, the Commonwealth failed to take the necessary precautions to preserve the evidence for trial. Instead, critical pages were removed from the book, specific to the time in question. Upon discovery of the missing pages [by] the defence [*sic*], copies of the pages were obtained, however, the[y] were excluded as evidence at trial because the "Agenda Book" from which they had been torn had been returned to the alleged victim and has no[w] reportedly disappeared entirely;

4. The Commonwealth failed to provide notice to the defence [*sic*] of two (2) other occasions upon which the alleged Victim made similar accusations against other persons, which would have negated the imposition of the Rape Shield Act;

5. The Commonwealth prevented [Appellant] from facing his accuser in Court by physically restricting the view he had of the alleged Victim during her testimony;

6. The Commonwealth thwarted the ability of the defence [*sic*] to effectively investigate the alleged incident by advising the Commonwealth witnesses not to cooperate with defence [*sic*] investigator[s] and improperly and untruthfully characterising [*sic*] said investigators as "tricky and deceitful.["]

***Anders*** Brief at 23-24 (quoting Rule 1925(b) Statement, 1/9/14, at 1-2).

Appellant's first issue involving the Commonwealth's purported withholding of the results of a 'Rape Kit' analysis is waived, as the record confirms that Appellant did not raise this allegation of prosecutorial misconduct below. ***See*** Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). In any event, even if this claim were preserved, we would agree with Attorney Wile that it is frivolous. Essentially, Appellant contends that the Commonwealth violated ***Brady v. Maryland***, 373 U.S. 83 (1963), by failing to turn over to the defense an allegedly favorable Rape Kit analysis.

Under ***Brady*** and its progeny, the prosecution has an obligation to disclose exculpatory information material to the

guilt or punishment of an accused, including evidence of an impeachment nature. To establish a **Brady** violation, an appellant must prove three elements:

(1) the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued.

The burden rests with the appellant to prove, by reference to the record, that evidence was withheld or suppressed by the prosecution. The evidence at issue must have been material evidence that deprived the defendant of a fair trial. Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

**Commonwealth v. Watkins**, 2014 WL 7392224, *12 (Pa. Dec. 29, 2014) (internal citations and quotation marks omitted).

Here, there is nothing in the record demonstrating that the Commonwealth possessed the results of a Rape Kit analysis. The only mention of such evidence came from a nurse who examined the victim at the hospital and testified that she collected a swab of a "brown substance" from the victim's vagina, turned the swab over to the police, and "[t]hat was the last time [she] saw it[.]" **See** N.T., 10/8/13, at 44-45. There is no indication in the record that the swabs were then sent to a laboratory for analysis, or that the Commonwealth received any results of such testing. Based on this record, Appellant has failed to demonstrate that evidence of a Rape Kit analysis even *exists*, let alone that the results thereof were favorable to his defense, and that they were suppressed by the

Commonwealth either willfully or inadvertently. Accordingly, even had Appellant preserved this claim for our review, we would deem it frivolous.

Next, Appellant argues that the Commonwealth committed misconduct by presenting video recordings that were 'misleading.' Initially, as both the juvenile court and Attorney Wile point out, it was Appellant who sought admission of the challenged video recordings, marked as defense exhibits D-5 through D-8. **See Anders** Brief at 26; JCO at 8. Moreover, when the recordings were admitted into evidence, the Commonwealth explained to the court that the videos appeared "slowed down" because the "recording mechanism" used by the school "only records every few seconds…." N.T., 10/7/13, at 169. Nothing in the record indicates that the Commonwealth manipulated the video recordings and then presented them as evidence. Accordingly, Appellant's second claim of prosecutorial misconduct is frivolous.

Appellant's third allegation of prosecutorial misconduct involves the victim's 'Agenda Book.' As Attorney Wile explains, "each student at Wissahickon High School must keep an Agenda Book that records the time, date and location where the student is going[,] and the respective teacher initials the entry." **Anders** Brief at 28 (citing N.T., 10/8/13, at 62). Appellant sought to introduce the victim's Agenda Book "to show that she was excused from class to go to the nurse's office to obtain medication[,]" not to go to the bathroom, as she had testified. **Id.** In other words, the Agenda Book would have impeached the victim's testimony and challenged

her overall credibility. While Appellant's Rule 1925(b) statement is rather confusing on this issue, it appears that he believes the Commonwealth failed to properly preserve, locate, and/or present the victim's Agenda Book to the defense.

We characterize Appellant's claim as essentially alleging that the Commonwealth committed a ***Brady*** violation. However, Appellant has not demonstrated that the Commonwealth withheld or suppressed the victim's Agenda Book. As Attorney Wile points out, Appellant did not seek the victim's Agenda Book during pretrial discovery; instead, he waited until the first day of the adjudication hearing to request that book. ***See*** N.T., 10/8/13, at 186. In response, the Commonwealth had the victim look for the book at her home, but she was unable to locate it. ***Id.*** at 183. Nothing in the record indicates that the Commonwealth possessed the book and withheld it from the defense.

Moreover, while the Agenda Book may have been favorable to Appellant, in that it could have challenged the victim's credibility, there is not a reasonable probability that it would have changed the result of the proceeding. The juvenile court states in its opinion that it found the victim

> to be an 'incredibly credible' witness, who maintained her composure in the face of extensive cross-examination, appeared truthful and honest, and if she thought she had said something differently in the past, [she] acknowledged it. The cross-examination was aggressive, with [d]efense counsel raising his voice and at times calling C.P. a liar. C.P. appeared anxious and scared but managed to answer questions promptly and rarely appeared uncertain, confused, or evasive. While her statements contained some inconsistencies, the inconsistencies did not

- 10 -

concern the rape itself as no evidence was presented which indicated that she stated it was consensual. As testified to by the hospital staff, C.P.'s injuries were consistent with the history she provided. The [court] believed her testimony based on her credibility.

JCO at 16-17. Based on the court's discussion, it is extremely unlikely that the ostensible impeachment evidence in the victim's Agenda Book would have changed the court's overall assessment of the victim's credibility. Accordingly, Appellant's **Brady** claim is frivolous.

Appellant next contends that the Commonwealth committed misconduct by failing to notify the defense that the victim made sexual assault complaints against two other individuals. The record indicates that this claim was first raised in Appellant's Rule 1925(b) statement; thus, it is waived. **See** Pa.R.A.P. 302(a). Nevertheless, we would again characterize Appellant's argument as a **Brady** claim, and conclude that it is frivolous. As the juvenile court points out, "[t]here is no support in the record that the Commonwealth failed to notify the defense of any other accusations the victim made against other persons." JCO at 10. Because Appellant has not even demonstrated that the Commonwealth possessed evidence or information that the victim made two prior assault allegations, his claim of prosecutorial misconduct is frivolous.

Next, Appellant maintains that the Commonwealth committed misconduct by positioning the victim in such a way during her testimony that Appellant was unable to see her. This assertion is waived, as Appellant did

not object to the positioning of the victim during the adjudication hearing. *See* JCO at 10; N.T., 10/7/13, at 26-27; Pa.R.A.P. 302(a).

In Appellant's sixth, and final, claim of prosecutorial misconduct, he avers that "the Commonwealth hampered his ability to investigate the underlying incident [of the victim's sexual assault] as a result of the Commonwealth['s] instructing its witnesses not to speak to defence [*sic*] investigators." **Anders** Brief at 35. We ascertain nothing in the record to support Appellant's bald allegation; accordingly, we agree with Attorney Wile that this claim is frivolous.

### III. Juvenile Court Errors

Appellant's next general issue encompasses the following seven claims for our review:

1. The juvenile court erred by improperly allowing the prosecutorial misconduct detailed in Argument II, *supra*;

2. The juvenile court erred by allowing the Commonwealth's attorney to persistently engage in speaking objections that equated to testimony and that provided responses from the alleged victim that were, in fact, crafted by the prosecuting attorney;

3. The juvenile court erred by regularly failing to rule upon objections posed by defence [*sic*] counsel and by instead directing respective counsel to reach [an] agreement amongst themselves;

4. The juvenile court erred by engaging in an improper *ex parte* communication in chambers with the prosecuting attorney and Commonwealth witnesses, including but not limited to, the lead investigator in this matter, immediately prior to reaching a verdict in this matter;

5. The juvenile court erred in adjudicating [Appellant] delinquent of the enumerated offenses because the Commonwealth failed to meet its burden of establishing [Appellant's] guilt beyond a reasonable doubt and that the evidence presented was insufficient to prove [Appellant's] guilt beyond a reasonable doubt;

6. The juvenile court erred by preventing [Appellant] from facing his accuser in court by physically obstructing the view he had of the alleged victim and the view she had of him during her testimony, thereby violating [Appellant's] constitutional right to confront his accuser under the Sixth Amendment of the U.S. Constitution, and the corresponding rights afforded by the Pennsylvania Constitution; and

7. The juvenile court improperly advocated for the Commonwealth during the trial and was impermissibly in favour [*sic*] of the Commonwealth.

***Anders*** Brief at 37-38 (quoting Rule 1925(b) Statement, 1/9/14, at 3-4).

Appellant first contends that the court erred by permitting the prosecutorial misconduct discussed, *supra*. Because we concluded that each of Appellant's prosecutorial misconduct claims were either waived and/or frivolous, his contention that the juvenile court erred in this regard is also waived and/or frivolous for the same reasons.

Next, Appellant argues that the juvenile court erred by allowing repeated 'speaking objections' by the Commonwealth. Because Appellant did not indicate in his Rule 1925(b) statement where these ostensibly improper objections occurred in the record, the court found this claim waived as "too vague" to address. JCO at 12 (citing ***Commonwealth v. Dowling***, 778 A.2d 683, 686-687 (Pa. Super. 2001) (finding the appellant's issue waived where his Rule 1925(b) statement was "not specific enough for the trial court to identify and address the issue [the] [a]ppellant wished to

raise on appeal")). The court also noted that Appellant failed to indicate where he challenged the Commonwealth's 'speaking objections' below; thus, the court concluded Appellant's claim was waived on this basis, as well. ***Id.*** (citing ***Commonwealth v. Baumhammers***, 960 A.2d 59, 73 (Pa. 2008) (considering "any issue waived where [the] [a]ppellant failed to assert a timely objection")). We agree with the juvenile court's waiver determination.

Appellant also argues that the juvenile court erred by "consistently refus[ing] to rule upon objections interposed by his defence [*sic*] counsel, … and instead urged respective counsel to work out their differences." ***Anders*** Brief at 42-43 (citation omitted).[3] The juvenile court appropriately concludes that this claim is waived, as defense counsel never challenged (or objected to) the court's addressing objections in this manner. ***See*** JCO at

---

[3] The juvenile court discussed one example of this type of ruling, stating:

> The Court recessed for counsel to discuss Exhibit D-9, which contained text messages, to determine if they could reach an agreement on the admissibility of the testimony. The Court requested this discussion occur as Exhibit D-4 (also text messages) unnecessarily delayed the proceedings. As with Exhibit D-4, Exhibit D-9 contained multiple texts which [Appellant] did not intend to use in questioning of the witness. Counsel acknowledged the situation with Exhibit D-4 by stating[,] "I've numbered this time, without trying to screw this up again." The Court then state[d,] "You may agree." If counsel could not agree, the Court would rule on the objections.

JCO at 13.

12-13. In any event, we would not deem the court's handling of objections legally improper, as the court simply requested that the parties attempt to reconcile their disputes before it intervened to rule on the objection(s). Accordingly, this claim is waived and/or frivolous.

Appellant next argues that the juvenile court improperly engaged in *ex parte* communications with the Commonwealth and its witnesses just prior to rendering its verdict. As Attorney Wile points out, nothing in the record supports this claim or suggests any improper communication by the juvenile court. Moreover, at no point did Appellant object to these purported communications, or present any other evidence establishing that such *ex parte* communications occurred. Consequently, this issue is frivolous.

In his fifth claim of court error, Appellant essentially challenges the sufficiency of the evidence to sustain his adjudication of delinquency. We addressed this claim under Appellant's first general issue, above.

Next, Appellant avers that the juvenile court deprived him of his right to confront witnesses against him by positioning the victim in such a way during her testimony that Appellant was unable to see her. For the reasons stated, *supra*, any challenge to the positioning of the victim on the witness stand was waived based on Appellant's failure to object.

In his seventh claim of error, Appellant maintains that the juvenile court "improperly advocated for the Commonwealth and was biased in favour [*sic*] of the Commonwealth." **Anders** Brief at 49. Nothing in the record supports this bald assertion; consequently, it is frivolous.

## (IV) Ineffective Assistance of Counsel

In Appellant's fourth general issue, he raises multiple claims of defense counsel's ineffectiveness. Initially, we note that "[b]ecause of a juvenile's lack of access to collateral review, we have concluded that it is necessary to review a juvenile's ineffective assistance of counsel claims on direct appeal, when properly raised." *In re K.A.T., Jr.*, 69 A.3d 691, 697 (Pa. Super. 2013). We also declared in *K.A.T., Jr.*, that a juvenile appellant may assert ineffective assistance of counsel claims for the first time in his or her Rule 1925(b) statement. *Id.* at 698-699. Thus, it appears that Appellant's ineffective assistance of counsel claims are properly preserved for our review. Those claims include the following:

> 1. Defence [*sic*] counsel was ineffective by failing to file a Motion for Recusal of the [Juvenile Court] Judge and request an evidentiary hearing based upon indications of the prospect of a premature judgment and/or other irregularities that may have served to deprive [Appellant] of a fair trial.
>
> 2. Defence [*sic*] counsel was ineffective in failing to raise timely and appropriate objections to the conduct of the prosecuting attorney as set forth above and herein including, but not limited to:
>
>> a. The failure [o]f the Commonwealth to produce the results of the analysis of the "Rape Kit[;"]
>>
>> b. The failure of the Commonwealth to produce the "Agenda Book[;"]
>>
>> c. The failure of the Commonwealth to produce accurate video representations at trial; and
>>
>> d. The improper conduct of the Commonwealth in preventing defence [*sic*] investigators from interviewing Commonwealth witnesses in an unimpeded fashion.

3. Defence [*sic*] counsel was ineffective in failing to fully and adequately investigate the prior conduct of the alleged Victim in terms of her making similar allegations against at least two (2) other individuals in the past.

4. Defence [*sic*] counsel was ineffective in failing to introduce any evidence of [Appellant's] mental disabilities and cognitive impairments so as to potentially negate the "intent" element of the offences [*sic*] charged.

5. Defence [*sic*] counsel was ineffective in engaging in a colloquy with [Appellant] regarding his right to testify in his defence [*sic*], in light of [Appellant's] mental disabilities and cognitive impairments. This was compounded by the fact that the colloquy was conducted without [Appellant's] parents['] confirming on the record his understanding of the consequences of his decision not to testify.

6. Defence [*sic*] counsel was ineffective in failing to object to the conduct of the trial overall which, as detai[l]ed above and herein, deprived [Appellant] of his constitutional right to a fair and objective trial and a determination by an impartial fact-finder.

***Anders*** Brief at 52-53 (quoting Rule 1925(b) Statement, 1/9/14, at 4-5).

We assess ineffective assistance of counsel claims under the following

standard:

With regard to ineffectiveness claims, counsel is presumed to be effective, and the appellant bears the burden of proving otherwise. ***In re A.D.***, 771 A.2d 45, 50 (Pa. Super. 2001). In reviewing ineffectiveness claims:

[W]e must first consider whether the issue underlying the charge of ineffectiveness is of arguable merit. If not, we need look no further since counsel will not be deemed ineffective for failing to pursue a meritless issue. If there is arguable merit to the claim, we must then determine whether the course chosen by counsel had some reasonable basis aimed at promoting the client's interests. Further, there must be a showing that counsel's ineffectiveness prejudiced Appellant's case. The burden of producing the requisite proof lies with Appellant.

- 17 -

*Id.* (citations omitted).

***K.A.T., Jr.***, 69 A.3d at 699.

Appellant's first claim of ineffectiveness, as raised in his Rule 1925(b) statement, is too vague to demonstrate arguable merit warranting further examination by the juvenile court or this Court. Appellant contends that defense counsel should have moved for the recusal of the juvenile court judge, and "request[ed] an evidentiary hearing based upon indications of the prospect of a premature and/or other irregularities that may have served to deprive [Appellant] of a fair trial." Rule 1925(b) Statement, 1/9/14, at 4. Appellant's concise statement does not sufficiently specify what 'indications' there were of a premature judgment, or describe what 'other irregularities' occurred, that would have supported a motion for recusal (or even a hearing on such a motion). Furthermore, our review of the record reveals nothing that would support such a motion by defense counsel. Accordingly, this claim is frivolous.

Appellant next avers that counsel was ineffective for failing to object to "incidents of prosecutorial misconduct" by the Commonwealth. More specifically, he challenges counsel's failure to object to the Commonwealth's ostensible withholding of both the Rape Kit analysis, as well as evidence that the victim made two prior allegations of sexual assault against other individuals. As we discussed *supra*, nothing in the record supports that such evidence existed, that the Commonwealth possessed it, or that the Commonwealth withheld it from the defense. Without something

demonstrating these facts, we cannot conclude that defense counsel acted improperly regarding these bald allegations. Consequently, these assertions of ineffectiveness are frivolous.

Appellant also argues that defense counsel acted improperly by not challenging the Commonwealth's failure to produce the victim's school Agenda Book. Again, as discussed *supra*, the record belies Appellant's claim that the Commonwealth committed objectionable misconduct regarding this evidence. Moreover, Attorney Wile points out that defense counsel "did vigorously argue this issue at the adjudication hearing and even asked [the court] to take an adverse inference against the Commonwealth as a result of its failure to produce [the victim's] Agenda Book." **Anders** Brief at 59. The record supports Attorney Wile's discussion of this issue, and we agree with him that it would be frivolous to argue that defense counsel's representation was inadequate regarding this evidence.

Next, Appellant avers that defense counsel acted ineffectively by not objecting to the ostensibly inaccurate video recordings played during the adjudication hearing. As discussed previously, the record does not support Appellant's assertion that the video recordings were inaccurate or misleading. Moreover, the juvenile court indicates in its opinion that it did not rely on the video recordings, but instead focused on the victim's testimony. **See** JCO at 8. Accordingly, Appellant has not demonstrated that this claim has arguable merit, or that he was prejudiced by counsel's purported error in this regard.

Appellant also maintains that defense counsel was ineffective for not objecting to the Commonwealth's advising its witnesses not to cooperate with defense investigators, which "hampered and hindered" Appellant's ability to prepare a defense. **Anders** Brief at 60. We have already concluded that there is nothing in the record to support Appellant's allegation that the Commonwealth acted in such a manner. Accordingly, Appellant has failed to prove that this assertion of ineffectiveness has arguable merit.

Appellant next avers that defense counsel acted improperly by "not adequately investigating [the victim's] history and prior conduct and discovering that she had previously made rape accusations against two (2) individuals other than [Appellant]." **Anders** Brief at 61. As stated *supra*, nothing in the record evinces that the victim actually made such prior allegations against other individuals. Without some sort of evidence of this fact, we decline to deem defense counsel ineffective for failing to go on a fishing expedition for this purported evidence. Consequently, this ineffectiveness claim is frivolous.

The same is true for Appellant's next two claims of counsel's ineffectiveness, which involve the impact of Appellant's purported 'mental disabilities and cognitive impairments' on the intent element of the offenses for which he was convicted, and the validity of Appellant's waiver of his right to testify. As Attorney Wile points out, "the record in this case reveals no evidence of any mental impairment or cognitive impairment suffered by

[Appellant]." ***Anders*** Brief at 62. Therefore, we ascertain no arguable merit to Appellant's claim that he was so mentally disabled that he could not form the intent to commit the crimes of which he was convicted. Additionally, upon reviewing the colloquy regarding Appellant's waiver of his right to testify, nothing suggests that Appellant did not understand what was taking place or the import of the right he was waiving. ***See*** N.T., 10/8/13, at 155-156. Accordingly, we agree with Attorney Wile that Appellant's claim of defense counsel's ineffectiveness regarding Appellant's ostensible mental deficiencies lacks arguable merit.

Finally, Appellant makes a very general allegation that defense counsel was ineffective for "failing to object to the conduct of the trial overall which, as detai[l]ed above and herein, deprived [Appellant] of his constitutional right to a fair and objective trial and a determination by an impartial fact-finder." ***Anders*** Brief at 53 (citation omitted). The juvenile court states in its opinion that it "never formed a premature judgment or was in any way prejudiced against Appellant. The [c]ourt conducted a fair hearing and decided the case upon the testimony of witnesses." JCO at 19. Nothing in the record belies the juvenile court's characterization of the fairness of the adjudication proceeding, or the court's assertion that it impartially judged the evidence before reaching a verdict. Consequently, this claim of defense counsel's ineffectiveness lacks arguable merit.

Having independently assessed each of Appellant's numerous claims of insufficient evidence, prosecutorial misconduct, court error, and ineffective

assistance of counsel, we agree with Attorney Wile that Appellant's claims are frivolous.[4] Additionally, we ascertain no other issue(s) of arguable merit that Appellant could present on appeal. Accordingly, we affirm the dispositional order entered on December 12, 2013, and grant Attorney Wile's petition to withdraw.

Dispositional order affirmed. Petition to withdraw granted. Jurisdiction relinquished.

Judge Lazarus joins the memorandum.

Justice Fitzgerald concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/24/2015

_____

[4] As stated *supra*, Appellant's parents filed with this Court a document entitled "'Urgent' Petition for Reconsideration of Additional Facts Filed by Prior Counsel" in which they asked this Court to 'reconsider' the issues raised in Appellant's Rule 1925(b) statement and reject Attorney Wile's petition to withdraw. Based on our disposition herein, we deny that petition.

IN THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY, PENNSYLVANIA

JUVENILE COURT

In the interest of B.B.                    :          No. 2013-304

**OPINION**

BARRETT, J.                                          JUNE 12 2014

B.B. (hereinafter: "B.B." or "Appellant") appeals from this court's adjudication Order of

November 25, 2013 adjudicating him delinquent of charges of rape (18 Pa.C.S.A. § 3121(a)(1)),

aggravated indecent assault (18 Pa.C.S.A. § 3125(a)(2)), and aggravated assault (18 Pa.C.S.A. §

2702 (a)(1)) and Disposition Order of December 12, 2013, committing him to the Northwestern

S.E.T. Program. B.B. filed a Concise Statement of Matters Complained of on Appeal, raising

three main issues with various sub-issues:

1. Prosecutorial Misconduct:

a) The Commonwealth withheld materials related to scientific analysis of evidence

submitted to a laboratory via a "Rape Kit", which, upon information and belief, was exculpatory;

b) The Commonwealth provided inaccurate video representations of the physical actions

of the Defendant and the alleged Victim immediately following the alleged incident, which were

misleading in that these representations were in "slow motion" and as such it was impossible to

determine whether the persons depicted were engaged in normal ambulation, slow walking,

accelerated walking, running or some combination thereof;

c) The Commonwealth failed to preserve and then produce the alleged Victim's school

"Agenda Book", knowing same to be a critical piece of potentially exculpatory evidence as to the

alleged Victim's departure time from a classroom immediately prior to the alleged incident, her

reasons for leaving, and her truthfulness. Further, knowing of the existence of said Agenda Book,

1



and its import, the Commonwealth failed to take the necessary precautions to preserve the evidence for trial. Instead, critical pages were removed from the book, specific to the time in question. Upon discovery of the missing pages by the defense, copies of those pages were obtained, however, they were excluded as evidence at trial because the "Agenda Book" from which they had been torn, had been returned to the alleged Victim and now has reportedly disappeared entirely.

d) The Commonwealth failed to provide notice to the defense of two (2) other occasions upon which the alleged Victim made similar accusations against other persons, which would have negated the imposition or the Rape Shield Act.

e) The Commonwealth prevented the Defendant from facing his accuser in Court by physically restricting the view he had of the alleged Victim during her testimony.

f) The Commonwealth thwarted the ability of the defense to effectively investigate the alleged incident by advising Commonwealth witnesses to not cooperate with defense investigators and improperly and untruthfully characterizing said investigators as "tricky and deceitful."

2. Errors Committed by the Trial Court:

a) The Trial Court erred by improperly allowing the prosecutorial misconduct detailed above to be committed unchecked;

b) The Trial Court erred by allowing the Commonwealth's attorney to persistently engage in speaking objections which equated to testimony and which provided responses from the alleged Victim that were in fact crafted by the prosecuting attorney.

c) The Trial Court erred by regularly failing to rule upon objections posed by defense counsel, and by instead directing respective counsel to reach agreement among themselves.

2

d) The Trial Court erred by engaging in an improper *ex parte* communication in chambers with the prosecuting attorneys and Commonwealth witnesses, including but not limited to the lead investigator in the matter, immediately prior to rendering a verdict in this matter;

e) The Trial Court erred in adjudicating the Juvenile delinquent of the enumerated offenses because the Commonwealth failed to meet its burden of establishing the Juvenile's guilt of such offenses beyond a reasonable doubt and the evidence presented was insufficient to prove the Juvenile's guilt of said offenses beyond a reasonable doubt;

f) The Trial Court erred by preventing the Defendant from facing his accuser in Court by physically obstructing the view he had of the alleged victim and the view she had of him during her testimony, thereby violating the Defendant's constitutional right to confront his accuser under the 6th Amendment of the U.S. Constitution, and the corresponding rights afforded by the Pennsylvania Constitution.

g) The Trial Court improperly advocated for the Commonwealth during the trial, and was impermissibly biased in favor of the Commonwealth.

The Undersigned, upon a thorough review of the record, respectfully submits that this claim is without merit.

3. Ineffective Assistance of Counsel:

a) Defense counsel was ineffective by failing to file a Motion for Recusal of the Trial Judge and request an evidentiary hearing based upon indications of the prospect of a premature judgment and/or other irregularities that may have served to deprive the Defendant of a fair trial;

b) Defense counsel was ineffective in failing to raise timely and appropriate objections to the conduct of the prosecuting attorney as set forth above and herein, including, but not limited to:

3

i) the failure of the Commonwealth to produce the results of the analysis of the "Rape Kit";

ii) the failure of the Commonwealth to produce the "Agenda Book";

iii) the failure of the Commonwealth to provide accurate video representations at trial;

iv) the improper conduct of the Commonwealth in preventing defense investigators from interviewing Commonwealth witnesses in an unimpeded fashion.

c) defense counsel was ineffective in failing to fully and adequately investigate the prior conduct of the alleged Victim in terms of her making similar allegations against at least two (2) other individuals in the past;

d) defense counsel was ineffective in failing to introduce any evidence of Defendant's mental disabilities and cognitive impairments so as to potentially negate the "intent" aspect of the offenses charged;

e) defense counsel was ineffective in engaging in a colloquy with the Defendant regarding his right to testify in his defense, in light of the Defendant's mental disabilities and cognitive impairments. This was compounded by the fact that the colloquy was conducted without the Defendant's parents confirming on the record his understanding of the consequences of his decision not to testify.

f) defense counsel was ineffective in failing to object to the conduct of the trial overall which, as detailed above and herein, deprived the Defendant of his constitutional right to a fair and objective trial and a determination by an impartial fact-finder.

4

# FACTS

C.P. and B.B. were students at Wissahickon High School, Montgomery County, PA, and had been acquainted for approximately three or four years at the time the subject incident occurred. Their relationship was characterized as one of friends. (N.T. 10.7.13, p. 28, 29). On the afternoon of April 29, 2013, the students were both in art class when B.B. asked C.P. if she wanted to go for a walk. (N.T. 10.7.13, p. 32, 33). C.P. admitted that she asked her teacher for a note to use the bathroom in order to leave class, and the two walked to the audion, a small auditorium, at the school. (N.T. 10.7.13, p. 34). In the few minutes it took to walk from the classroom to the audion, C.P. testified that B.B.'s speech turned "mumbly" and his eyes were "red." (N.T. 10.7.13, p. 38, 39). B.B. pushed C.P. onto the steps at the stage, pulled down her pants, pulled down his pants, and raped and sexually assaulted her. C.P. tried to get away, but B.B. held her. (N.T. 10.7.13, p. 41, 44, 45). This incident lasted approximately five-six minutes, after which B.B. "ran away." C.P. immediately went to the school nurse's office, where she ultimately told the nurse of her rape by B.B. (N.T. 10.7.13, p. 47).

A Juvenile Petition charging B.B. with rape pursuant to 18 Pa.C.S. § 3121(a)(1), involuntary deviate sexual assault pursuant to 18 Pa.C.S.A. § 3123(a)(1), aggravated assault pursuant to 18 Pa.C.S.A. § 2702 (a)(1), aggravated indecent assault pursuant to 18 Pa.C.S.A. § 3125(a)(2), indecent assault pursuant to § 3126(a)(2), simple assault pursuant to 18 Pa.C.S.A. § 2701(a)(1), and recklessly endangering another person pursuant to 18 Pa.C.S.A. § 2705 was filed on May 1, 2013. The Honorable John L. Braxton, Senior Judge held Detention Proceeding on May 1, 2013 releasing B.B. to the care of his mother and father. The Undersigned modified the above-mentioned Order on May 8, 2013 further clarifying the terms of B.B.'s release to his parents, such as ordering him to have no contact with C.P. in person, by phone, by electronic

5

devices or a third party by agreement of the parties, and further ordering him to avoid Wissahickon High School grounds. The Undersigned issued a Plea Summons on May 15, 2013. The Honorable S. Gerald Corso, Senior Judge Ordered B.B. to be detained at the Montgomery County Youth Center on June 4, 2013. The Commonwealth filed a Petition to Transfer the proceedings to Adult Criminal Court, which following a Certification Hearing on July 17, 2013, the Undersigned denied by Order of September 11, 2013.

The adjudication hearing was held on October 7-9, 2013. The Undersigned announced his decision in adjudicating B.B. delinquent of rape, aggravated indecent assault, and aggravated assault on the record on October 9, 2013 (N.T. 10.9.13, p. 3, 4). The Undersigned declined to adjudicate B.B. delinquent of the other charges brought. (N.T. 10.9.13, p. 4). This decision is also reflected by the Undersigned's Juvenile Court Order – Adjudication of October 8, 2013, and reflects that all other charges were dismissed. Additionally, the Undersigned declined to adjudicate B.B. delinquent of involuntary deviate sexual intercourse. B.B. retained new counsel for the purposes of disposition and appeal. The Undersigned entered his Order of Disposition on November 25, 2013, and signed the Order of Commitment on December 12, 2013, committing him to the Northwestern S.E.T. Program. It is from these Orders that B.B. filed the instant, timely appeal to the Superior Court of Pennsylvania on December 26, 2013. The Undersigned issued an Order pursuant to Pa.R.A.P. 1925(b) directing B.B. to file a Concise Statement of Matters Complained of on Appeal, which was timely and duly filed on January 9, 2014.

6

## DISCUSSION

The Undersigned will address Appellant's claims in the order presented by his Concise Statement of Matters Complained of on Appeal, beginning with his allegations of Prosecutorial Misconduct. At the outset, the Undersigned notes that many of the issues raised by Appellant are not contained in the record. Further, both trial counsel and disposition/Appellate counsel for B.B. had ample opportunity to raise these issues and/or object for the record at the close of the Adjudication Hearing on October 9, 2013 and at the Disposition Hearing on November 25, 2013, yet failed to do so.

**1. Prosecutorial Misconduct**

**a) The Commonwealth withheld materials related to scientific analysis of evidence submitted to a laboratory via a "Rape Kit", which, upon information and belief, was exculpatory**

The Undersigned has no knowledge or information regarding this claim of error, and therefore cannot respond to this contention of error.

In the matter *sub judice*, the Commonwealth did not introduce the results of the "Rape Kit" during the adjudication hearing and further, the Undersigned had no knowledge or information regarding the results. The Commonwealth witnesses from the hospital where C.P. was treated following the incident testified on cross-examination that they took swabs of a substance from C.P., but did not know anything of the result. (N.T. 10.8.13, p. 45). The Undersigned is unaware whether the Commonwealth submitted the swabs for scientific analysis. The issue was not raised before the Trial Court and pursuant to Pa.R.A.P. 302(a), cannot be raised for the first time on appeal.

**b) The Commonwealth provided inaccurate video representations of the physical**

7

actions of the Defendant and the alleged Victim immediately following the alleged incident, which were misleading in that these representations were in "slow motion" and as such it was impossible to determine whether the persons depicted were engaged in normal ambulation, slow walking, accelerated walking, running or some combination thereof

The Court is unaware of who originally provided the video Exhibits marked D-5 through D-8, inclusive. The Defense marked, introduced, and sought the admission of these Exhibits. The Undersigned raised the issue of whether the video had been slowed (N.T. 10.8.13, p. 167) and Detective Fowler explained the video only records every few seconds, and consequently, appears slowed down. (N.T. 10.8.13, p. 168). The Undersigned ultimately did not rely on the video to determine whether C.P. and B.B. were engaged in normal ambulation or otherwise, instead relying on C.P.'s testimony for this evidence.

c) The Commonwealth failed to preserve and then produce the alleged Victim's school "Agenda Book", knowing same to be a critical piece of potentially exculpatory evidence as to the alleged Victim's departure time from a classroom immediately prior to the alleged incident, her reasons for leaving, and her truthfulness. Further, knowing of the existence of said Agenda Book, and its import, the Commonwealth failed to take the necessary precautions to preserve the evidence for trial. Instead, critical pages were removed from the book, specific to the time in question. Upon discovery of the missing pages by the defense, copies of those pages were obtained, however, they were excluded as evidence at trial because the "Agenda Book" from which they had been torn, had been returned to the alleged Victim and now has reportedly disappeared entirely.

The Undersigned has no information or knowledge regarding missing pages from C.P.'s Agenda Book. The Agenda Book was a log students were required to use at Wissahickon High

8

School to sign in and out of class. (N.T. 10.8.13, p. 73).

A photocopy of pages allegedly from C.P.'s Agenda Book was made available and marked by the Defense as Exhibit D-1 during the adjudication hearing. As noted by the Commonwealth's attorney during the adjudication hearing, the parties handled a Motion to Compel prior to trial and reached an agreement regarding all outstanding discovery; the original Agenda Book was not requested. (N.T. 10.8.13, p. 73; Agreed Discovery Order of September 11, 2013). B.B.'s counsel requested the Agenda Book for the first time on October 7, 2013 during the trial. (N.T. 10.8.13, p. 186).

The Undersigned determined on the record that this Book had "obvious evidentiary value", and ordered the Commonwealth to produce it *if* C.P. were able to find it at her house, "in an abundance of caution, to be fair to the juvenile [B.B.]". (N.T. 10.8.13, p. 73, 74). However, C.P. was unable to find the book. (N.T. 10.8.13, p. 183, 186, 187; N.T. 10.9.13, p. 96). B.B.'s counsel indicated that the principal of Wissahickon High School would authenticate the two pages which were illegible. (N.T. 10.9.13, p. 92). The top picture of a page from C.P.'s Agenda Book was admitted into evidence. (N.T. 10.8.13, p. 180). The bottom two photocopied pages were illegible. (N.T. 10.9.13, p. 92). These bottom pages were not authenticated, nor was their significance explained by a witness; their admission was not requested. (N.T. 10.8.13, p. 180).

The issues regarding departure time from the classroom immediately prior to the alleged incident, C.P.'s reasons for leaving, and her truthfulness were explained thoroughly through the questioning of various witnesses during the adjudication.

**d) The Commonwealth failed to provide notice to the defense of two (2) other occasions upon which the alleged Victim made similar accusations against other persons, which would have negated the imposition of the Rape Shield Act.**

9

The Undersigned, having no knowledge or information regarding these allegations, cannot respond to this claim of error. There is no support in the record that the Commonwealth failed to notify the defense of any other accusations the victim made against other persons.

**e) The Commonwealth prevented the Defendant from facing his accuser in Court by physically restricting the view he had of the alleged Victim during her testimony.**

The Undersigned finds that pursuant to Pa.R.A.P. 302(a), this contention of error is waived as no objection was raised before the trial court. The United States Constitution provides for the right of all accused to be confronted with the witnesses against them and to cross-examine them, a right also recognized and protected by the Constitution of this Commonwealth. *See* U.S. Const. amend. VI; Article I, Section 9 of the Pennsylvania Constitution; *In re N.C.*, 74 A.3d 271, 275 (Pa.Super.2013). Prior to the 2003 Amendment of Article I, Section 9, the accused in a criminal proceeding was afforded the express right to confront a witness "face-to-face." However, following the 2003 Amendment, the accused now is afforded the right only "to be confronted with the witnesses against him." The removal of the "face-to-face" provision brought Section 9 into line with the Sixth Amendment to the United States Constitution. *See Commonwealth v. Geiger*, 944 A.2d 85, n. 5 (Pa.Super.2008), *appeal denied*, 600 Pa. 738, 964 A.2d 1 (2009). Further, the Pennsylvania Supreme Court, in detailing a United States Supreme Court holding on this very issue, reinforced that "while the Confrontation Clause Sixth Amendment reflects a preference for face-to-face confrontation, face-to-face confrontation is neither an absolute nor an indispensable requirement." *Commonwealth v. Williams*, 2014 WL 241870 (Pa. January 21, 2014). Further, the preference for face-to-face confrontation must give way to public policy considerations and the necessities of the case. *Id.*

In criminal and juvenile proceedings, violations of this right have been found when a

10

witness is physically present but is uncooperative with his or her testimony and when video testimony is offered in lieu of live testimony with the ability to cross-examine. *In re N.C.*, 74 A.3d 271, 275 (Pa.Super.2013).

In the matter *sub judice*, the parties arranged for C.P. to testify in person with a physical view of defense counsel, but not necessarily of B.B. Due to her trepidation around B.B., this arrangement proved to be the best way for C.P. to testify. During the hearing, defense counsel never objected to his client being unable to physically see C.P., but alerted the Undersigned and the Commonwealth each time C.P. was out of his own view; she shifted back to face-to-face view accordingly. (N.T. 10.7.13, p. 25, 26, 43). C.P. was physically present, subject to extensive cross-examination by defense counsel face-to-face, and B.B. was present throughout C.P.'s testimony with the ability to hear her testify and assist his counsel throughout the examination. Therefore, B.B. was not deprived of his right to confront under the United States and Pennsylvania Constitutions.

**f) The Commonwealth thwarted the ability of the defense to effectively investigate the alleged incident by advising Commonwealth witnesses to not cooperate with defense investigators and improperly and untruthfully characterizing said investigators as "tricky and deceitful."**

The Undersigned, having no knowledge or information regarding this claim, finds that this contention of error, in the absence of factual context, is too vague to be addressed and is therefore waived for the purposes of appellate review. When the trial court is presented with a vague or undeveloped claim in a concise statement of errors complained of on appeal, the court may not make an effort to develop it to make it comprehensible. *Commonwealth v. Dowling*, 778 A.2d 683, 686-687 (Pa.Super.2001). The Trial Court would then act as an advocate for the

11

appellant over remaining impartial, intruding on the appellant's right to counsel. *Commonwealth v. Butler*, 756 A.2d 55, 57 (Pa.Super.2000). The above statement of error contains no reference to these alleged statements from the Commonwealth, no citation to the record, nor was any such incident developed in the record, leaving the Undersigned impermissibly forced to develop it.

**2. Errors Committed by the Trial Court:**

**a) The Trial Court erred by improperly allowing the prosecutorial misconduct detailed above to be committed unchecked**

The Court has already addressed the contentions of prosecutorial misconduct to the extent the Court has knowledge and respectfully submits its position in the previous section.

**b) The Trial Court erred by allowing the Commonwealth's attorney to persistently engage in speaking objections which equated to testimony and which provided responses from the alleged Victim that were in fact crafted by the prosecuting attorney.**

This contention of error, lacking context, is too vague and the Undersigned respectfully suggests that it is waived for the purposes of appellate review. In the matter *sub judice*, this claim of error lacks reference to the record and the Undersigned must guess to what defense counsel refers, which is impermissible under the law. *Dowling, supra; Butler, supra*. Further, it is well-settled in Pennsylvania that a defendant's failure to object to allegedly improper testimony at the proper stage results in waiver. *Commonwealth v. Bauhammers*, 960 A.2d 59, 73 (Pa. 2008).

**c) The Trial Court erred by regularly failing to rule upon objections posed by defense counsel, and by instead directing respective counsel to reach agreement among themselves.**

As above, the Undersigned strove for a just adjudication and the record contains

12

objections on both sides resolved by counsel or withdrawn. Further, if no timely objection is made on any evidentiary issue, an issue is not preserved for appeal. *Commonwealth v. Hairston*, 84 A.3d 657 (Pa 2014), quoting *Commonwealth v. Brown*, 467 Pa. 512, 359 A.2d 393 (1976). The Court recessed for counsel to discuss Exhibit D-9, which contained text messages, to determine if they could reach an agreement on the admissibility of the testimony. The Court requested this discussion occur as Exhibit D-4 (also text messages) unnecessarily delayed the proceedings. (N.T. 10.9.13, p. 140). As with Exhibit D-4, Exhibit D-9 contained multiple texts which B.B. did not intend to use in questioning of the witness. Counsel acknowledged the situation with Exhibit D-4 by stating "I've numbered this time, without trying to screw this up again." (N.T. 19.7.13, p. 177). The Court then states "You may agree." (N.T. 10.7.13, p. 178). If counsel could not agree, the Court would rule on the objections. Therefore, the Undersigned respectfully suggests that any claim of error regarding the resolution of objections has been waived.

    **d) The Trial Court erred by engaging in an improper *ex parte* communication in chambers with the prosecuting attorneys and Commonwealth witnesses, including but not limited to the lead investigator in the matter, immediately prior to rendering a verdict in this matter**

    The Undersigned submits that there was no *ex parte* communication at any point during this adjudication, confirmed by a review of the transcript and record, particularly regarding the fact that the above-mentioned claim of error makes no specific reference to the record. The record does reveal that at the close of the adjudication hearing, when asked if he had any questions, defense counsel stated that he had none. (N.T. 10.9.13, p. 7). The same is true of the disposition hearing. (N.T. 11.25.13, p. 43, 44). As no objection to any alleged *ex parte*

13

communication was made for the record, any claim of error on this issue is thereby waived for appellate review pursuant to Pa.R.A.P. 302(a).

**e) The Trial Court erred in adjudicating the Juvenile delinquent of the enumerated offenses because the Commonwealth failed to meet its burden of establishing the Juvenile's guilt of such offenses beyond a reasonable doubt and the evidence presented was insufficient to prove the Juvenile's guilt of said offenses beyond a reasonable doubt**

In a juvenile proceeding, the hearing judge sits as the finder of fact, and the weight of the testimony of the witnesses is within the exclusive province of the fact-finder. *In re L.A.*, 853 A.2d 388, 391 (Pa.Super.2004). A delinquent act is one that constitutes a crime under the laws of Pennsylvania, with exceptions not applicable to the facts of this case. 42 Pa.C.S. § 6302. A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa.Super.2000). The Superior Court of Pennsylvania has also instructed in great detail that:

In reviewing sufficiency of evidence claims, we must determine whether the evidence admitted at trial, as well as all reasonable inferences drawn therefrom, when viewed in the light most favorable to the verdict winner, are sufficient to support all the elements of the offense. Additionally, to sustain a conviction, the facts and circumstances which the Commonwealth must prove[ ] must be such that every essential element of the crime is established beyond a reasonable doubt. Admittedly, guilt must be based on facts and conditions proved, and not on suspicion or surmise. Entirely circumstantial evidence is sufficient so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The fact[-]finder is free to believe all, part, or none of the evidence presented at trial.

*In re K.A.T., Jr.*, 69 A.3d 691 (Pa.Super.2013), *appeal denied*, 81 A.3d 78 (Pa. December 18, 2013), quoting *Commonwealth v. Moreno*, 14 A.3d 133, 136 (Pa.Super.2011) (internal

14

citations omitted). The Commonwealth, as the verdict winner in the matter *sub judice*, is entitled to a view in the light most favorable to it.

With regard to the charge of rape, to prove its case pursuant to 18 Pa.C.S.A. § 3121(a)(1), the Commonwealth in the instant action was required to present evidence that B.B. engaged in sexual intercourse with C.P. "by forcible compulsion." The term "forcible compulsion" within the purview of the rape statute includes both physical force, as well as psychological duress, but was not intended by General Assembly to be extended to embrace appeals to the intellect or morals of the victim. *Commonwealth v. Mlinarich*, 542 A.2d 1335, 1337 (Pa. 1988).

There was ample evidence during the hearing and in the record to support the finding that B.B. committed this act beyond a reasonable doubt. C.P. testified that while she walked into the audion freely with B.B., B.B. then pushed her against the stairs, holding her while she screamed, struggled, and cried, pulled her pants down, and forcibly had sexual intercourse with her without her consent. She further testified that she went immediately to the school nurse's office and after a brief period of time, told the nurse what had happened. Additionally, she was taken to the hospital where her injuries were determined as severe, some of the worst the hospital doctor on duty and staff had ever seen, and required an epidural (typically used for childbirth) so as to perform an examination. (N.T. 10.7.13, p. 43-44; N.T. 10.8.13, p. 9, 13, 14, 17, 19, 20, 21). Additional witness testimony established that C.P. always maintained that she had been raped and that B.B. had been her rapist. (N.T. 10.8.13, p. 147). Therefore, there was adequate evidence beyond a reasonable doubt to support that B.B. raped C.P.

To prove that B.B. committed aggravated indecent assault under 18 Pa.C.S.A. §3125(a)(2), the Commonwealth was required to prove beyond a reasonable doubt that B.B. engaged in penetration of the genitals or anus of the complainant (C.P.) with a part of the

15

person's body for any purpose other than a good faith medical, hygienic, or law enforcement procedures by forcible compulsion.

As discussed above, the record is rife with testimony and evidence regarding the severity of C.P.'s injuries, of which the doctor that examined her at the hospital and other hospital staff testified were severe and consistent with the type of assault reported. (N.T. 10.8.13, p. 9, 13, 14, 17, 19, 20, 21, 109, 113). C.P. also testified extensively that she felt B.B.'s penis and fingers penetrate her genitals. (N.T. 10.7.13, p. 45, 46). There was no evidence that this was done with any of the good faith purposes depicted in the applicable statute. In addition, the doctor who examined her after this incident testified that her injuries were consistent with the history she gave the hospital staff. (N.T. 10.8.13, p. 109). The Court therefore found forcible compulsion to adjudicate B.B. delinquent of aggravated indecent assault beyond a reasonable doubt.

As to the charge of aggravated assault under 18 Pa.C.S.A. §2702(a)(1), the Commonwealth was required to prove beyond a reasonable doubt that B.B. attempted to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life. Under this section of the above-referenced statute, aggravated assault does not require proof that serious bodily injury was inflicted but only that attempt was made to cause such injury. *Commonwealth v. Elrod*, 572 A.2d 1229 (Pa.Super.1990), *appeal denied*, 527 Pa. 629, 592 A.2d 1297 (1990).

In the matter *sub judice*, the Undersigned found that B.B. attempted to cause serious injury in his rape and assault of C.P. There is ample evidence in the record and cited in the analysis of rape and aggravated indecent assault which confirm the Commonwealth proved aggravated assault beyond a reasonable doubt.

Ultimately, the Undersigned found C.P., a 15 year old ninth grader, to be an "incredibly

16

credible" witness, who maintained her composure in the face of extensive cross-examination, appeared truthful and honest, and if she thought she had said something differently in the past, acknowledged it. (N.T. 10.9.13, p. 6). The cross-examination was aggressive, with Defense counsel raising his voice and at times calling C.P. a liar. C.P. appeared anxious and scared but managed to answer questions promptly and rarely appeared uncertain, confused, or evasive. While her statements contained some inconsistencies, the inconsistencies did not concern the rape itself as no evidence was presented which indicated that she stated it was consensual. As testified to by the hospital staff, C.P.'s injuries were consistent with the history she provided. The Undersigned believed her testimony based on her credibility. (N.T. 10.9.13, p. 7).

In the event B.B.'s statement raises a weight of the evidence claim, the Undersigned determines that Appellant's contention is too unfocused and therefore, is waived. As the Superior Court of Pennsylvania instructed in *Commonwealth v. Seibert*, 799 A.2d 54, 62 (Pa.Super.2002), finding that where the appellant merely claimed that "the verdict of the jury was against the weight of the evidence," the claim was too vague for meaningful appellate review and was appropriately dismissed by the trial court. In the instant action, Appellant claims only that the Commonwealth failed to meet its burden of establishing the Juvenile's guilt of such offenses beyond a reasonable doubt and thus, it was error for the Undersigned to adjudicate him delinquent. In the absence of specific references to the evidence and record, the Undersigned treats this claim as waived.

**f) The Trial Court erred by preventing the Defendant from facing his accuser in Court by physically obstructing the view he had of the alleged victim and the view she had of him during her testimony, thereby violating the Defendant's constitutional right to confront his accuser under the 6th Amendment of the U.S. Constitution, and the**

17

corresponding rights afforded by the Pennsylvania Constitution.

As discussed in Section 1(e) of this Opinion, no objection was made on this issue before this Court, and therefore, cannot be raised for the first time on appellate review. Pa.R.A.P. 302(a).

**g) The Trial Court improperly advocated for the Commonwealth during the trial, and was impermissibly biased in favor of the Commonwealth.**

In the absence of any factual context, this claim is too vague for the Undersigned to properly address and is thus, waived. *Dowling, supra; Butler, supra; Seibert, supra.* This Court did not advocate for the Commonwealth, nor was it impermissibly biased in its favor. The Court conducted a fair proceeding. It should be noted that the Commonwealth filed a Petition to Transfer Juvenile to Adult Court which was opposed by B.B. Following a hearing, this Court agreed with B.B. and denied the Commonwealth's Petition. On September 13, 2013, B.B. filed a Petition to Modify Conditions of Detention, which this Court granted in part by Order of October 3, 2013 by personally making arrangements for B.B. and his counsel to have access to an area of the Montgomery County Youth Center Administrative Area to prepare his case.

**3. Ineffective Assistance of Counsel:**

At the outset of this claim, the Undersigned notes that in a criminal proceeding, an ineffective assistance of counsel claim must be raised on collateral review under the Post-Conviction Relief Act Statute (PCRA). *Commonwealth v. Grant*, 813 A.2d 726 (Pa. 2002). However, as juveniles are not afforded relief under the PCRA statute, an ineffective assistance of counsel claim may be raised on direct appeal. *In re K.A.T., Jr., supra.*

**a) Defense counsel was ineffective by failing to file a Motion for Recusal of the Trial Judge and request an evidentiary hearing based upon indications of the prospect of a**

18

premature judgment and/or other irregularities that may have served to deprive the Defendant of a fair trial

The Undersigned finds this claim of error to be both vague pursuant to *Dowling, supra; Butler, supra*, and waived pursuant to Pa.R.A.P. 302(a) as there was no objection during the hearing to any prospect of a premature judgment, nor did defense counsel at any time during the adjudicative hearing file such a Motion for Recusal. Additionally, defense counsel had no basis upon which to file such a Motion, as the Court never formed a premature judgment or was in any way prejudiced against Appellant. The Court conducted a fair hearing and decided the case upon the testimony of witnesses.

b) Defense counsel was ineffective in failing to raise timely and appropriate objections to the conduct of the prosecuting attorney as set forth above and herein, including, but not limited to:

i) the failure of the Commonwealth to produce the results of the analysis of the "Rape Kit";

ii) the failure of the Commonwealth to produce the "Agenda Book";

iii) the failure of the Commonwealth to provide accurate video representations at trial;

iv) the improper conduct of the Commonwealth in preventing defense investigators from interviewing Commonwealth witnesses in an unimpeded fashion.

From a thorough review of the record, defense trial counsel did raise objections to the Agenda Book and requested an adverse inference for the Commonwealth's alleged failure to produce it, a request that was denied by the Undersigned. Therefore, Appellant cannot now claim that his counsel during the hearing erred when he did object to these issues. As to the results of

19

the "Rape Kit," the Undersigned has no knowledge or information regarding this evidence. Further, items (iii) and (iv) have already been previously addressed in this opinion.

**c) defense counsel was ineffective in failing to fully and adequately investigate the prior conduct of the alleged Victim in terms of her making similar allegations against at least two (2) other individuals in the past**

As discussed in detail in Section 1(d) above, the Undersigned has no knowledge or information regarding these allegations.

**d) defense counsel was ineffective in failing to introduce any evidence of Defendant's mental disabilities and cognitive impairments so as to potentially negate the "intent" aspect of the offenses charged**

The Undersigned has no knowledge or information regarding this alleged failure.

**e) defense counsel was ineffective in engaging in a colloquy with the Defendant regarding his right to testify in his defense, in light of the Defendant's mental disabilities and cognitive impairments. This was compounded by the fact that the colloquy was conducted without the Defendant's parents confirming on the record his understanding of the consequences of his decision not to testify.**

In the instant action, the colloquy conducted by defense counsel reflected an informed, knowing, and voluntary decision not to testify and that it was made by a juvenile who understood what was happening and the effect of his choice not to testify. (N.T. 10.8.13, p. 155, 156). There was no evidence or testimony that he was unable to understand the nature of the proceedings or that his decision not to testify was made due to an inability to participate in his own defense.

**f) defense counsel was ineffective in failing to object to the conduct of the trial overall which, as detailed above and herein, deprived the Defendant of his constitutional**

right to a fair and objective trial and a determination by an impartial fact-finder.

As the Undersigned has already discussed the impartiality of his ruling, the fact that the adjudication hearing was conducted objectively and fairly, and due to the fact that no objection was made regarding any perceived impartiality on the part of the Undersigned, this issue was waived pursuant to Pa.R.A.P. 302(a).

## CONCLUSION

Based upon the foregoing, the Undersigned respectfully submits that the adjudication of delinquency and dispositional order should be affirmed.

BY THE COURT:

_____
R. STEPHEN BARRETT, J.

Copies sent to the following:
Paul W. Tressler, Esquire,
District Attorney's Office

21