J-A01016-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| THOMAS A. JEFFREY, | |
| Appellant | No. 1787 WDA 2015 |

Appeal from the Judgment of Sentence of August 20, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0013390-2014

BEFORE:  BOWES, OLSON and STRASSBURGER,* JJ.

MEMORANDUM BY OLSON, J:                          **FILED JULY 14, 2017**

Appellant, Thomas A. Jeffrey, appeals from the judgment of sentence entered on August 20, 2015, following his jury trial convictions for rape, statutory sexual assault, incest, criminal attempt, corruption of minors, endangering the welfare of a child, and indecent assault.[1]  We affirm.

The trial court set forth the facts of this case as follows:

> The victim in this case, [J.J.],[2] is the oldest daughter of Appellant.  She did not testify at trial.  [J.J.'s] church youth leader, Tabitha Hill, testified that on June 19, 2014, shortly after 10:00 p.m., she received text messages from [J.J.] Earlier that day, she and [J.J.] had returned home from a church trip.  The first text message from [J.J.] to Hill

---

[1]  18 Pa.C.S.A. §§ 3121, 3122.1, 4302, 901, 6301, 4304, and 3126, respectively.

[2] Because the victim was a minor, we use her initials to protect her identity.

---

*Retired Senior Judge assigned to the Superior Court.

stated[,] "It happened again." Hill responded[,] "What happened again?" [J.J.] replied[,] "What I told you about earlier." [J.J.] then began to describe details of a sexual assault that took place moments prior. Hill testified that, while on the church trip, [J.J.] had disclosed to Hill that her father had been sexually assaulting her. Uncertain of what to do, Hill called her pastor who notified the police.

Officer Christopher Burns responded to the call and arrived at the Jeffrey residence. [J.J.] disclosed to Officer Burns that she had been sexually assaulted by her father, [Appellant]. [J.J.] was transported to Children's Hospital of Pittsburgh, where she initially met with the resident physician Dr. [Regina] Toto. Dr. Toto testified that, as she does with all incoming patients, she asked [J.J.] her reason for coming to the ER. [J.J.] disclosed to Dr. Toto that she had been sexually assaulted that evening, penile penetration was involved, no condom was worn, and that the perpetrator sucked on her earlobe and ejaculated on her thigh. Dr. Toto created a medical record containing [J.J.'s] disclosure and the recommended course of treatment. While Dr. Toto was consulting with her attending physician about the plan of treatment, [J.J.'s] mother arrived. After that, [J.J.] refused all treatment, including a sexual assault kit and testing for sexually transmitted diseases.

As a result of [J.J.'s] disclosure, Officer Burns returned to the Jeffrey home that night and collected [J.J.'s] duvet cover. Elizabeth Wisbon, a scientist in the Allegheny County Office of the Medical Examiners Forensic Laboratory Division, testified that Appellant's sperm was present on [J.J.'s] duvet cover. The following morning, Appellant made a full, recorded confession to detectives at the Allegheny County Police [h]eadquarters.

Trial Court Opinion, 4/22/2016, at 4-6 (record citations omitted).

A jury convicted Appellant of the aforementioned charges on May 29, 2015. On August 20, 2015, prior to sentencing, Appellant filed a notice of his intention to seek an oral motion for extraordinary relief pursuant to Pa.R.Crim.P. 704(b). Therein, Appellant argued that he was entitled to a

new trial because he received a copy of a handwritten recantation letter from the victim dated July 28, 2015, after the trial in this matter. The case proceeded to sentencing on August 20, 2015, wherein the trial court orally denied Appellant's motion for extraordinary relief and then sentenced Appellant to an aggregate sentence of 10 to 22½ years of imprisonment followed by a consecutive term of seven years of probation.

On August 21, 2015, Appellant filed a post-sentence motion, again requesting a new trial, but this time based upon after-discovered evidence of the victim's purported repudiation letter. Moreover, in further support of his post-sentence motion, Appellant alleged that a detective (later identified as Detective Michael Kuma) testified at the victim's dependency hearing held on November 7, 2014. Appellant claimed that Detective Kuma indicated at the dependency hearing that the victim had retracted her initial allegations against Appellant near in time to the preliminary hearing in this matter.

On August 21, 2015, the trial court conducted an *in camera* hearing wherein it questioned the victim about her alleged recantation:

> At that hearing, [J.J.] was represented by counsel and chose not [to] assert a 5[th] Amendment privilege. [J.J.] testified that she wrote the letter dated July 28, 2015 that began "To Whom it May Concern." [J.J.] could not recall why she made the disclosure to Hill or exactly what she said. She said that she chose to make her father the target of a sexual abuse allegation because she was mad at the fact that she was not enjoying her experience at camp and he was the last person with whom she spoke, and that he encouraged her to stay at the camp. She testified that she didn't know how to back out of what she said and texted to Hill, even though she also said she did not remember making any statements. She denied that anything

inappropriate happened between her and Appellant. She testified that one of the detectives threatened her that if she refused to testify at the preliminary hearing against her father, both she and her mother would go to jail. Further, she said that she made up the detailed allegations of sexual abuse by her father because she wanted to get the police officers who interviewed her to leave.

Trial Court Opinion, 4/22/2016, at 6.

On October 13, 2015, the trial court resumed its hearing wherein Detective Kuma testified. Despite presenting Detective Kuma with transcripts from the victim's dependency hearing indicating he stated that the victim had retracted her allegations at a meeting prior to the preliminary hearing, Detective Kuma still denied saying that J.J. had recanted. At the conclusion of the October 2015 hearing, the trial court orally denied Appellant relief on his post-sentence motion. This timely appeal resulted.[3]

On appeal, Appellant presents the following issues for our review:

> I.  Whether the [t]rial [c]ourt erred and abused its discretion by denying Appellant a full evidentiary hearing on his [m]otion in [l]imine and admitt[ing] evidence of testimonial statements made by J.J. where the statements obtained were obtained by law enforcement with the primary purpose to establish past events relevant to its criminal prosecution of [Appellant]?

---

[3] On November 12, 2015, Appellant filed a notice of appeal. On November 13, 2015, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant complied timely after the trial court granted him an extension. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on April 22, 2016.

II.     Whether the [t]rial [c]ourt erred and abused its discretion by admitting the testimony of Doctors Jocelyn Plesa and Regina Toto regarding J.J.'s statements made at Children's Hospital under Pennsylvania Rules of Evidence 803(4), where the statements were not made for purposes of medical diagnosis or treatment?

III.    Whether the [t]rial [c]ourt erred in dismissing Appellant's [p]ost-[s]entence [m]otion for a [n]ew [t]rial when the record established that the Commonwealth failed to disclose materially relevant evidence to the [d]efense, namely, that J.J. had recanted her allegation at the preliminary hearing, nine months prior to trial?

IV.     Whether the [t]rial [c]ourt erred in denying Appellant's [p]etition for [w]rit of [h]abeas [c]orpus where the only evidence presented at the preliminary hearing was rank hearsay, which subsequently denied [Appellant] his fundamental right of due process guaranteed by the Fifth and Sixth Amendment to the United States Constitution, as well as Article I, Section 9, of the Pennsylvania Constitution?

V.      Whether there was sufficient evidence as a matter of law for the jury to convict [Appellant] of [r]ape where the Commonwealth failed to establish the [f]orcible [c]omplusion element of 18 Pa.C.S.A. § 3121(a)(1) beyond a reasonable doubt?

Appellant's Brief at 7-8.

In his first issue presented, Appellant argues that the trial court erred when it failed to hold an evidentiary hearing on his motion *in limine* seeking to exclude J.J.'s statements to medical personnel as testimonial. *Id.* at 14. Essentially, Appellant argues that the police exerted such control over the questioning of the victim at the hospital, that her statements were not elicited primarily for medical treatment. Instead, Appellant avers, "the

primary purpose behind law enforcement's interview with J.J. [at the hospital] on June 20, 2014, was to establish past events relevant to its criminal prosecution of [Appellant]." *Id.* Appellant suggests that the victim never actually spoke with emergency room doctors and "contends the two doctors generated their respective reports as the result of information received from the detectives and the victim's mother." *Id.* at 47. Accordingly, Appellant suggests that if he had been able to establish who was present in the examining room with J.J., he could have shown that the police, rather than the medical personal, were eliciting J.J.'s statements in order to prosecute Appellant. *Id.* at 20-25. Appellant contends that police "intercepted J.J. at Children's Hospital four minutes after her arrival and [] they were the first to question her." *Id.* at 25. Appellant argues that the victim did not independently seek medical treatment and there was no on-going emergency, "[r]ather, [the victim] was transported to the hospital at the express instruction of law enforcement[.]" *Id.* at 34 (emphasis omitted). Appellant contends that, once at the hospital, the police secured J.J.'s hospital room and began questioning, which functioned as the equivalent to a police interview room and a custodial interrogation. *Id.* at 38-40. Thus, Appellant argues that "J.J.'s statements were made in response to questioning directed and controlled by law enforcement, with the primary purpose of building a case against" Appellant, in violation of his right to confrontation under the United States and Pennsylvania Constitutions. *Id.* at 25-44.

Generally, our standard of review of a trial court's evidentiary ruling is whether the trial court abused its discretion. ***Commonwealth v. Minerd***, 753 A.2d 225 (Pa. 2000). However, "[an] assertion of a Confrontation Clause violation presents an issue of law. Our scope of review is plenary and our standard of review is *de novo.*" ***Commonwealth v. (Donald Earl) Williams,*** 103 A.3d 354, 358 (Pa. Super. 2014).

Our Supreme Court has explained:

Under both the United States Constitution and the Pennsylvania Constitution, the right to confrontation specifically guarantees a person accused of a crime the right to be confronted with the witnesses against him. As the United States Supreme Court has explained, the right to confrontation is basically a trial right, and includes both the opportunity for cross-examination of the witnesses and the occasion for the jury to consider the demeanor of the witnesses. The central concern of the Confrontation Clause is to ensure the reliability of the evidence against a criminal defendant by subjecting it to rigorous testing in the context of an adversary proceeding before the trier of fact.

***Commonwealth v. (Gordon Charles) Williams,*** 84 A.3d 680, 684 (Pa. 2014) (internal citations and quotations omitted).

This Court has examined United States Supreme Court jurisprudence regarding the Confrontation Clause and noted:

The principle evil at which the Confrontation Clause was directed was the civil-law mode of procedure, and particularly its use of *ex parte* communications as evidence against the accused. Likewise, the Framers would not have allowed admission of testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination. The [United States Supreme] Court [in the seminal case of ***Crawford v. Washington***, 541 U.S. 36 (2004)] found no occasion to offer a comprehensive definition of [the term] testimonial. Whatever

else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations.

*       *       *

[In a decision following **Crawford**, the United States Supreme Court] distinguished testimonial and nontestimonial hearsay:

> Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution.

The [United States] Supreme Court confirmed that the protection of the Confrontation Clause attaches only to testimonial hearsay.

*       *       *

[T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred. The existence of an ongoing emergency is important because it indicates that the declarant's purpose in speaking was to help resolve a dangerous situation rather than prove past events[:]

> The medical condition of the victim is important to the primary purpose inquiry to the extent that it sheds light on the ability of the victim to have any purpose at all in responding to police questions and on the likelihood that any purpose formed would necessarily be a testimonial one. The victim's medical state also provides important context for first responders to judge the existence and

- 8 -

magnitude of a continuing threat to the victim, themselves, and the public.

*(Donald Earl) Williams*, 103 A.3d at 358–361 (internal citations and quotations omitted).

Here, the trial court rejected Appellant's suggestion that the police dominated or directed the interview with the victim in the hospital, opining:

> [T]he [challenged] statements at issue [at trial] were made to Dr. Toto, a resident physician in the ER of Children's Hospital. Dr. Toto testified that [J.J.] disclosed to her that her reason for visiting the ER was because she had been sexually assaulted. In the privacy of the hospital room, Dr. Toto asked for more specific details for the purpose of diagnosis and planning the most appropriate course of treatment. This conversation between [J.J.] and Dr. Toto does not fit into either of the classes of testimonial statements described in *Crawford*. It was not *ex parte* in-court testimony, or its functional equivalent, nor was it a statement made to a police officer. Dr. Toto testified that she asks every patient what brings her into the ER. Furthermore, the declarant, [J.J.] would not reasonably expect her statements to a doctor in the ER to be used later in litigation. [J.J.'s] statements to Dr. Toto were not testimonial in nature pursuant to *Crawford*, and therefore, their admission does not violate [] Appellant's Sixth Amendment right to confront witnesses against him.

Trial Court Opinion, 4/22/2016, at 7 (record citations omitted).

Upon review of the record, we discern no abuse of discretion or error of law in admitting the non-testimonial statements the victim made to hospital staff for purposes of assessing her medical condition and considering potential courses of treatment. While Appellant casts the medical interview as being police controlled, Dr. Toto testified at trial that she asked the victim why she was at the emergency room and once J.J. stated she had been sexually assaulted, Dr. Toto cleared the hospital room

so that they could talk privately. N.T., 5/26/2015, at 75. Dr. Toto asked for details of the assault "to determine what the next best course would be in terms of, first of all, diagnosing her and then, second of all, planning her -- the most appropriate treatment." *Id.* The victim relayed that Appellant penetrated her with his penis, did not use a condom, and ejaculated on her hip. *Id.* at 76. As a result, Dr. Toto proposed performing tests for sexually transmitted diseases and a rape kit; however, the victim refused. *Id.* at 76-77. Dr. Toto testified that she did not meet with detectives before her interview with J.J., no one told her what questions to ask the victim, and that the medical report was based solely upon what J.J. disclosed to her. *Id.* at 77-78. Based upon the foregoing, we agree with the trial court's assessment. The victim's statements were made at the emergency room to hospital personnel for the purpose of medical treatment and, thus, non-testimonial in nature. Appellant had the opportunity to confront and cross-examine Dr. Toto regarding the victim's interview. As such, we discern no violation of the Confrontation Clause by the trial court's admission of the victim's statements at trial.

In his second issue presented, Appellant argues, in the alternative, that if this Court "concludes the victim's statements [were] non-testimonial, Appellant contends the victim did not make the statement[s] with a motive consistent with obtaining medical care, and as such were inadmissible under Pennsylvania Rule of Evidence 803(4)." *Id.* at 44. "[Appellant] contends the two doctors generated their respective reports as the result of

information received from the detectives and the victim's mother." *Id.* at 47.

Rule 803(4) provides an exception to the general rule against hearsay when a statement "is made for – and is reasonably pertinent to – medical treatment or diagnosis in contemplation of treatment[.]" Pa.R.E. 803(4)(A). Such a statement "describes medical history, past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof, insofar as reasonably pertinent to treatment, or diagnosis in contemplation of treatment." Pa.R.E. 803(4)(B). As discussed above, the victim made the statements to medical staff for the purpose of treatment. Accordingly, it was proper for the trial court to admit the hospital records, including the victim's statement, pursuant to Rule 803(4). Hence, Appellant's second issue is without merit.

In his third issue presented, Appellant argues that the trial court erred in dismissing his post-sentence motion for a new trial when the Commonwealth failed to disclose materially relevant evidence to Appellant, *i.e.*, that the victim had recanted the allegations against Appellant at a meeting prior to the preliminary hearing in this matter. Appellant's Brief at 48. Appellant also contends that following the verdict, but prior to sentencing, he received after-discovered evidence of a handwritten letter from the victim dated July 28, 2015 wherein J.J. stated she fabricated the allegations against Appellant. *Id.* at 12. In that July 2015 letter, the victim says she told the Assistant District Attorney and the investigating detectives

at a meeting prior to the preliminary hearing nine months before trial that her allegations against Appellant were untrue. *Id.* at 48. In further investigating this claim, Appellant avers that, "on November 7, 2014, at a related dependency hearing [for the victim] before the Honorable Kathleen Mulligan (Family Division of Court of Common Pleas of Allegheny County), Detective Kuma testified consistent with J.J.'s account of the preliminary hearing [as expressed in her July 2015 letter]." *Id.* at 54. Appellant claims that upon uncovering the after-discovered evidence, the Commonwealth's ultimate failure to disclose the victim's recantation constitutes a violation under *Brady v. Maryland*, 373 U.S. 83 (1963). *Id.* at 48-50.

Based upon the foregoing facts, Appellant raises two distinct legal claims. First, Appellant claims the July 15, 2015 recantation letter, and the evidence obtained thereafter, constitutes after-discovered evidence. Second, Appellant contends that the Commonwealth knew about, but withheld in violation of *Brady*, the meeting prior to the preliminary hearing, as well as Detective Kuma's statements made at the victim's dependency hearing, relating to the victim's recantation of her assault claims against Appellant.

Our Supreme Court has stated:

> After-discovered evidence cases premised upon recantation testimony are instructive in explicating the [importance of a] credibility assessment. When seeking a new trial based on alleged after-discovered evidence in the form of recantation testimony, the petitioner must establish that: (1) the evidence has been discovered after trial and it could not have been

- 12 -

obtained at or prior to trial through reasonable diligence; (2) the evidence is not cumulative; (3) it is not being used solely to impeach credibility; and (4) it would likely compel a different verdict. Given that the [] petitioner must demonstrate, and the [lower] court must determine, that the after-discovered evidence "would likely compel a different verdict," as well as the fact that recantation testimony "is notoriously unreliable, particularly where the witness claims to have committed perjury," [our Supreme] Court has remanded after-discovered evidence cases and specifically directed the trial or PCRA court to make credibility determinations on the recantation testimony with an eye to the relevant prejudice standard.

*     *     *

Thus, the after-discovered evidence cases tie the court's credibility determination to the governing prejudice standard.

*Commonwealth v. Johnson*, 966 A.2d 523, 541–542 (Pa. 2009) (internal citations omitted).

Furthermore, to establish a *Brady* violation, an appellant must prove three elements:

(1)  the evidence at issue was favorable to the accused, either because it is exculpatory or because it impeaches; (2) the evidence was suppressed by the prosecution, either willfully or inadvertently; and (3) prejudice ensued.

*Commonwealth v. Paddy*, 15 A.3d 431, 450 (Pa. 2011). "Favorable evidence is material, and constitutional error results from its suppression by the government, if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* There is no *Brady* violation, however, when the appellant knew or, with reasonable diligence, could have uncovered the

- 13 -

evidence in question, or when the evidence was available to the defense from other sources. *Id.* at 451.

Here, we conclude that Appellant failed to establish that he could not have obtained the proffered evidence at or prior to trial through reasonable diligence, or that the Commonwealth suppressed it.[4] While the July 2015 letter obtained from the victim after trial technically qualifies as after-discovered evidence, Appellant knew of the underlying recantation evidence that he now relies upon prior to trial. The victim's dependency hearing was held on November 7, 2014, over six months before the trial in this matter. At that dependency hearing, when asked when the victim purportedly recanted, Detective Kuma stated, "[a]t the preliminary hearing she was saying it didn't happen, it never happened." Dependency Hearing N.T., 11/7/2014, at 43. Appellant, represented by a parent advocate, was personally present for that hearing and exercised his Fifth Amendment right to refuse questioning. *Id.* at 48-49. Thus, Appellant heard the entirety of the evidence he now claims was unknown to him and suppressed by the

---

[4] We recognize that the trial court did not address whether the information was known to Appellant prior to trial and, instead, determined that the victim's recantation was not credible and, combined with the additional evidence presented at trial, there was no prejudice to Appellant. However, "[w]e can affirm the trial court's decision if there is any basis to support it." *Commonwealth v. Sunealitis*, 153 A.3d 414, 423 (Pa. Super. 2016) (citation omitted). Additionally, as discussed at length below, we also agree with the trial court's prejudice assessment under the after-discovered evidence and *Brady* standards.

Commonwealth. Accordingly, the proffered evidence simply does not qualify as after-discovered. Moreover, because the Commonwealth did not have this evidence in its exclusive possession and it was available from another source, namely the dependency hearing Appellant personally attended, the Commonwealth did not suppress the proffered evidence under *Brady*.

Finally, as noted before, the trial court determined that Appellant failed to establish prejudice. The trial court initially determined that the victim's recantation was not credible. Trial Court Opinion, 4/22/2016, at 10. The trial court concluded that the victim was under considerable pressure from her family because J.J. and her four siblings were removed from the family home. *Id.* Since this assessment finds support in the record, we will not disturb the court's credibility determination. Additionally, the Commonwealth produced evidence that corroborated the victim's initial statements to her camp counselor and hospital staff, as well as Appellant's audiotaped confession. At trial, the Commonwealth introduced physical evidence of Appellant's semen that police collected from the victim's bedspread shortly after the most recent alleged assault. In light of the trial court's credibility assessment as to J.J. and the additional, unchallenged evidence against Appellant, we conclude Appellant failed to establish that the outcome of his verdict would have been different under either the after-discovered evidence or *Brady* standards. For all of the foregoing reasons, Appellant's third issue lacks merit.

In his fourth issue presented, Appellant argues that his fundamental right to due process was violated when the Commonwealth relied solely on hearsay evidence at his preliminary hearing. This Court has recently rejected this precise claim. **See Commonwealth v. McClelland**, 2017 WL 2312083, at *10 (Pa. Super. 2017) ("[W]e cannot find that the inability to subject the primary accuser to adversarial examination violated due process."). Hence, Appellant is not entitled to relief on his fourth allegation of error.

Finally, Appellant argues that there was insufficient evidence for the jury to convict him of rape because the Commonwealth failed to produce evidence that he used force or the threat of force against the victim. Appellant's Brief at 76-77. We previously determined:

> In order to preserve a challenge to the sufficiency of the evidence on appeal, an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient. Such specificity is of particular importance in cases where, as here, the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt.

**Commonwealth v. Garland**, 63 A.3d 339, 344 (Pa. Super. 2013). In this case, Appellant challenged the sufficiency of the evidence "on any and all of the charges presented against him by the Commonwealth." Rule 1925(b) Statement, 1/5/2016, at *6, ¶ h (unpaginated). Appellant failed to identify the specific conviction and the elements of that crime subject to his sufficiency challenge. This results in the waiver of Appellant's claim.

Moreover, the trial court did not have the opportunity to address the specific claim that Appellant currently advances and "[n]ew legal theories cannot be raised on appeal." ***Commonwealth v. Truong***, 36 A.3d 592, 598 (Pa. Super. 2012); Pa.R.A.P. 302(a) ("Issues not raised in the lower court are waived and cannot be raised for the first time on appeal."). As such, Appellant waived his last issue.

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/14/2017